607 P.2d 640

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Gilberto CHAVEZ, Defendant-Appellant.**

**No. 4013.**

Court of Appeals of New Mexico.

Nov. 1, 1979.

Mary Jo Snyder, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Michael E. Sanchez, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

SUTIN, Judge.

Defendant was found guilty of the offense of possession of heroin. On November 1, 1977, sentence of defendant was deferred for two years and defendant was placed on probation under certain terms and conditions.

On July 5, 1978, the State filed a Motion to Revoke Probation and Impose Sentence stating that defendant had violated his probation by spending the night of April 20, 1978 with Maria Dix, then, without permission, leaving with her son. On July 6, 1978, State filed an amended motion alleging that defendant had violated his probation agreement by failing to submit monthly reports to his probation officer for the months of April, May and June, 1978.

On July 22, 1978, defendant was arrested and taken into custody. Pursuant to a hearing held upon defendant's Motion for

Release, the district court, on August 2, 1978, released defendant upon certain terms and conditions pending the disposition of State's Motion to Revoke Probation. On February 28, 1979, seven months after defendant's arrest, a hearing was held resulting in the revocation of defendant's probation for failure to submit monthly reports for April, May and June, 1978. Defendant appeals from an Amended Judgment, Sentence and Commitment. A transcript of the proceedings is absent. Only the record proper is before us. We reverse.

The question for decision is:

Was defendant denied procedural due process because of an unreasonable delay in holding the hearing at which probation was revoked?

This is a matter of first impression.

Section 31–21–15, N.M.S.A.1978, entitled "Return of probation violator" reads in pertinent part:

A. At any time during probation:

(1) the court may issue a warrant for the arrest of a probationer for violation of any of the conditions of release.

\*      \*      \*      \*      \*      \*

B. *The court shall then hold a hearing*, which may be informal, *on the violation charged.* If the violation is established, the court may continue or revoke the probation and may require the probationer to serve the balance of the sentence imposed or any lesser sentence. *If imposition of sentence was deferred, the court may impose any sentence which might originally have been imposed, but credit shall be given for time served on probation.* [Emphasis added.]

■ "Probation" is the release by the court without *imprisonment* of an adult defendant convicted of a crime. "Probation" is a form of conditional liberty intended to alleviate the aspects of punishment by incarceration. It offers rehabilitation and restoration to society. "The suspension of the execution of the sentence gives to the defendant a valuable right. It gives him the right of personal liberty which is one of the highest rights of citizenship. This right

cannot be taken from him without notice and opportunity to be heard without invading his constitutional rights." *Ex Parte Lucero*, 23 N.M. 433, 438, 168 P. 713, 715, L.R.A. 1918C 549 (1917). Personal liberty is also a valuable right because each day of liberty is a credit against the sentence imposed, if any, at the end of the probation period.

A probationer who has a "valuable right," is entitled to every protection of that right under the law of the land. Society is also entitled to protection from an adult convicted of a crime whose sentence is deferred and who is granted personal liberty. Thus, we are faced with two contending principles—the right of a probationer to personal liberty and the right of the State to self-protection.

And striking the balance implies the exercise of judgment. This is the inescapable judicial task in giving substantive content, legally enforced, to the Due Process Clause, and it is a task ultimately committed to this Court. It must not be an exercise of whim or will. It must be an overriding judgment founded on something much deeper and more justifiable than personal preference. *Sweezy v. New Hampshire*, 354 U.S. 234, 267, 77 S.Ct. 1203, 1220, 1 L.Ed.2d 1311 (1957), Frankfurter, J., concurring.

The opinion of this Court should be impersonal in judgment, but we cannot belie the encroachment of subjective views when we determine what is "fair," "unjust," "arbitrary" or "capricious."

Article II, Section 18 of the New Mexico Constitution provides in pertinent part:

No person shall be deprived of life, liberty or property without due process of law   .    .    . .

"Due process of law," although defined in various hues and shades by judges and scholars, is an elusive concept. Its exact boundaries are undefinable and its content varies in accordance with specific factual concepts. A century ago, it was said in *Davidson v. New Orleans*, 96 U.S. 97, 101–02, 24 L.Ed. 616 (1877):

**104**

It must be confessed, however, that the constitutional meaning or value of the phrase "due process of law," remains today without that satisfactory precision of definition which judicial decisions have given to nearly all the other guarantees of personal rights found in the constitutions of the several States and of the United States.

" 'Due process of law in each particular case means such an exercise of the powers of the government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs.' Cooley, Const. Lim. 441." Black's Law Dictionary, 590 (Rev. 4th ed. 1968).

Under this broad definition, the right of a person to personal liberty may be taken by a state without due process of law in many ways. If procedures used to deprive a person of liberty are found to be suitable in one sense of fairness under the circumstances, the exercise of the powers of the courts will be adjudged to be "Due Process of Law"; but if the procedures used are found to be arbitrary, oppressive, and unjust, the powers exercised will lack "Due Process of Law." It naturally follows that where procedures enacted by the legislature are violated, a judicial proceeding may deprive a person of liberty without "Due Process of Law."

What is meant by the phrase in § 31–21–15(B): "The court shall then hold a hearing"?

" 'Then, as an adverb of time, means "at that time," referring to the time stated . . . .' " State v. Klasner, 19 N.M. 474, 477, 145 P. 679, 680, Ann.Cas. 1917D 824 (1914). It has also been said that " 'The primary and accepted meaning of "then," according to Webster, is "at that time." It also has a secondary meaning, "soon afterward, or immediately." ' " State v. Hartley, 25 Wash.2d 211, 170 P.2d 333, 339 (1946).

■ "The court shall then hold a hearing" is a mandatory duty imposed upon the court to hold a revocation hearing immediately after (1) the probationer is taken into custody pursuant to § 31–21–15(A)(1), or (2) a notice to appear to answer a charge of violation is personally served upon a probationer pursuant to § 31–21–15(A)(2), or (3) the probationer is arrested pursuant to § 31–21–15(A)(3) and upon the arrest and detention "the director shall immediately notify the court, and submit in writing a report showing in what manner the probationer has violated the condition of release." This is imperative in order to comply with the legislative intent. Discretion is not vested in the trial court to unreasonably delay the hearing. At its direction, the probationer is brought before the court forthwith to explain away the accusation, to have his say before the word of the pursuers is received to his undoing. State v. Brusenhan, 78 N.M. 764, 438 P.2d 174 (Ct.App.1968). Promptness is an essential factor. It protects the probationer, if detained in jail to await a hearing, against prolonged imprisonment. Defendant might have spent seven months in the Santa Fe County Jail or the New Mexico Penitentiary. Promptness also protects a probationer against revocation because information is fresh and sources are available. Memories can fade and witnesses be lost. The right of personal liberty is of priceless value and deserves the protection of the law. Undue delay may jeopardize the personal liberty of a probationer.

We are not concerned with due process of law as applied to an administrative revocation hearing under the minimum requirements stated in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Neither decision dealt with judicial probation nor with judicial revocation of probation. In administrative revocation, a preliminary hearing must be held. Even so, Morrissey said that "due process would seem to require that some minimal inquiry be conducted . . . as promptly as convenient after arrest while information is fresh and sources are available." [408 U.S. at 485, 92 S.Ct. at 2602.]

■ We hold that a hearing for revocation of probation by a court which granted probation will satisfy due process if the hearing is held immediately after a notice to appear to answer a charge of violation is personally served upon a probationer.

■ Authorities have been cited by defendant and the State which have held delays of days and months reasonable and unreasonable, but none have statutes or rules which state a time period such as "The hearing shall then take place." The rule is prevalent that a revocation hearing will satisfy due process if the hearing is held promptly or within a reasonably short period of time after an alleged violation or after an arrest for a violation. We unhesitatingly hold that seven months delay after arrest is unreasonable. Procedural due process was denied defendant.

Defendant is restored to his status as a probationer with credit for the time served on probation from November, 1978.

Reversed.

IT IS SO ORDERED.

LOPEZ, J., concurs.

HERNANDEZ, J., dissents.

HERNANDEZ, Judge (dissenting).

I respectfully dissent.

The defendant alleged two points of error for reversal. The first was that the lower court erred in not denying his motion to dismiss the State's amended motion to revoke probation and impose sentence because he was not afforded a preliminary hearing and this together with the delay in holding the revocation constituted a denial of his due process rights as applied to the States by the Fourteenth Amendment. To better demonstrate my basic disagreement with the majority it is necessary to examine *Morrissey* and *Scarpelli* in considerable detail. I note one minor disagreement at the outset. I do not believe that the Supreme Court intended that *Morrissey* and *Scarpelli* apply to administrative revocation proceedings only.

Chief Justice Burger, writing for the court in *Morrissey*, said:

We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations.

.  .  .  .  .

[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a "right" or a "privilege." By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.

Turning to the question what process is due, we find that the State's interests are several. The State has found the parolee guilty of a crime against the people. That finding justifies imposing extensive restrictions on the individual's liberty. .  .  . Given the previous conviction *and the proper imposition of conditions,* the State has an overwhelming interest in being able to return the individual to imprisonment *without the burden of a new adversary criminal trial* if in fact he has failed to abide by the conditions of his parole. [Emphasis added.]

Yet, the State has no interest in revoking parole without some informal procedural guarantees. .  .  . A simple factual hearing will not interfere with the exercise of discretion.

.  .  .  .  .

We now turn to the nature of the process that is due, bearing in mind that the interest of both State and parolee will be furthered by an effective but informal hearing. In analyzing what is due, we see two important stages in the typical process of parole revocation.

(a) *Arrest of Parolee and Preliminary Hearing.* The first stage occurs when

the parolee is arrested and detained, usually at the direction of his parole officer. The second occurs when parole is formally revoked. There is typically a substantial time lag between the arrest and the eventual determination by the parole board whether parole should be revoked. Additionally, it may be that the parolee is arrested at a place distant from the state institution, to which he may be returned before the final decision is made concerning revocation. Given these factors, due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available.

. . . . .

In our view, due process requires that after the arrest, the determination that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case.

. . . . .

This independent officer need not be a judicial officer. The granting and revocation of parole are matters traditionally handled by administrative officers.

. . . . .

With respect to the preliminary hearing before this officer, the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged. At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer. On request of the parolee, persons who have given adverse information on which parole revocation is to be based are to be made available for questioning in his presence. However, if the hearing officer determines that the informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination.

The hearing officer shall have the duty of making a summary, or digest, of what occurs at the hearing in terms of the responses of the parolee and the substance of the documents or evidence given in support of parole revocation and of parolee's position. Based on the information before him, the officer should determine whether there is probable cause to hold the parolee for final decision of the parole board on revocation. Such a determination would be sufficient to warrant the parolee's continued detention and return to the state correctional institution pending the final decision. As in *Goldberg,* "the decision maker should state the reasons for his determination and indicate the evidence he relied on . . ." but it should be remembered that this is not a final determination calling for "formal findings of fact and conclusions of law."

. . . . .

(b) *The Revocation Hearing.* There must also be an opportunity for a hearing, *if it is desired by the parolee,* prior to the final decision on revocation by the parole authority. This hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation. The revocation hearing must be tendered within a reasonable time after the parolee is taken into custody. [Emphasis added.]

. . . . .

We cannot write a code of procedure; that is the responsibility of each State. Most States have done so by legislation, others by judicial decision usually on due process grounds. Our task is limited to deciding the minimum requirements of

due process. They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

We emphasize there is no thought to equate this second state of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

.        .        .        .        .

Control over the required proceedings by the hearing officers can assure that delaying tactics and other abuses sometimes present in the traditional adversary trial situation do not occur. Obviously a parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime.

In *Scarpelli* the Supreme Court considered the right of a probationer or parolee to appointed counsel at a revocation hearing:

Petitioner does not contend that there is any difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation, nor do we perceive one. Probation revocation, like parole revocation, is not a state of a criminal prosecution, but does result in a loss of liberty. Accordingly, we hold that a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey v. Brewer, supra.*

.        .        .        .        .

[T]he effectiveness of the rights guaranteed by *Morrissey* may in some circumstances depend on the use of skills which the probationer or parolee is unlikely to possess. Despite the informal nature of the proceedings and the absence of technical rules of procedure or evidence, the unskilled or uneducated probationer or parolee may well have difficulty in presenting his version of a disputed set of facts where the presentation requires the examining or cross-examining of witnesses or the offering or dissecting of complex documentary evidence.

By the same token, we think that the Court of Appeals erred in accepting respondent's contention that the State is under a constitutional duty to provide counsel for indigents in all probation or parole revocation cases. While such a rule has the appeal of simplicity, it would impose direct costs and serious collateral disadvantages without regard to the need or the likelihood in a particular case for a constructive contribution by counsel. In most cases, the probationer or parolee has been convicted of committing another crime or has admitted the charges against him. And while in some cases he may have a justifiable excuse for the violation or a convincing reason why revocation is not the appropriate disposition, mitigating evidence of this kind is often not susceptible of proof or is so simple as not to require either investigation or exposition by counsel.

The introduction of counsel into a revocation proceeding will alter significantly the nature of the proceeding. If counsel is provided for the probationer or parolee, the State in turn will normally provide its own counsel; lawyers, by training and disposition, are advocates and bound by professional duty to present all available evidence and arguments in support of their clients' positions and to contest with vigor all adverse evidence and views.

.     .     .

Certainly, the decisionmaking process will be prolonged, and the financial cost

to the State—for appointed counsel, counsel for the State, a longer record, and the possibility of judicial review—will not be insubstantial.

In some cases, these modifications in the nature of the revocation hearing must be endured and the costs borne because, as we have indicated above, the probationer's or parolee's version of a disputed issue can fairly be represented only by a trained advocate. But due process is not so rigid as to require that the significant interests in informality, flexibility, and economy must always be sacrificed.

.        .        .        .        .

We thus find no justification for a new inflexible constitutional rule with respect to the requirement of counsel. We think, rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system.

.        .        .        .        .

It is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements. . . .

Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. . . . In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record.

I have quoted at such length from *Morrissey* and *Scarpelli* to show that even though the Supreme Court extended some due process protections to parole and probation revocation hearings the Court also stated that such proceedings are not part of a criminal prosecution and that the full panoply of rights afforded a defendant in a criminal trial do not apply. Also see *State v. Murray*, 81 N.M. 445, 468 P.2d 416 (Ct. App.1970).

It is also well to keep in mind the status of probationers and parolees. Chief Justice Burger, then on the circuit bench, stated the following in *Hyser v. Reed*, 115 U.S. App.D.C. 254, 318 F.2d 225 (D.C.Cir. 1963):

A paroled prisoner can hardly be regarded as a "free" man; he has already lost his freedom of due process of law and, while paroled, he is still a convicted prisoner whose tentatively assumed progress towards rehabilitation is in a sense being "field tested." Thus it is hardly helpful to compare his rights in that posture with his rights before he was duly convicted.

Even though *Morrissey* modifies this statement as to due process rights, it is still helpful in maintaining a proper perspective. Also See *State v. Brusenhan*, 78 N.M. 764, 438 P.2d 174 (Ct.App.1968).

My principle disagreement with the majority is that they view this matter as if it were merely a continuation of the original prosecution which led to defendant's conviction.

New Mexico, by statute and decision, affords probationers and parolees all of the due process protections required by *Morrissey* and *Scarpelli* with the exception of preliminary hearings.

The pertinent sections of our Probation and Parole Act, Sections 31–21–3 through 31–21–19, N.M.S.A.1978, are the following:

*Section 31–21–14* :

A. At any time during release on parole the board or the director may issue a warrant for the arrest of the released prisoner for violation of any of the conditions of release, or issue a notice to appear to answer a charge of violation. The notice shall be served personally

upon the prisoner. The warrant shall authorize the superintendent of the institution from which the prisoner was released to return the prisoner to the actual custody of the institution or to any other suitable detention facility designated by the board or the director. If the prisoner is out of the state, the warrant shall authorize the superintendent to return him to the state.

.    .    .    .    .

C. Upon arrest and detention, the board shall cause the prisoner to be promptly brought before it for a parole revocation hearing on the parole violation charged, under rules and regulations the board may adopt. If violation is established, the board may continue or revoke the parole or enter any other order as it sees fit.

*Section 31–21–15* :

A. At any time during probation:

(1) the court may issue a warrant for the arrest of a probationer for violation of any of the conditions of release. The warrant shall authorize the return of the probationer to the custody of the court or to any suitable detention facility designated by the court; or

(2) the court may issue a notice to answer a charge of violation. The notice shall be personally served upon the probationer; or

(3) the director may arrest a probationer without warrant or may deputize any officer with power of arrest to do so by giving him a written statement setting forth that the probationer has, in the judgment of the director, violated the conditions of his release. The written statements, delivered with the probationer by the arresting officer to the official in charge of a county jail or other place of detention, is sufficient warrant for the detention of the probationer. Upon arrest and detention, the director shall immediately notify the court and submit in writing a report showing in what manner the probationer has violated the conditions of release.

B. The court shall then hold a hearing, which may be informal, on the violation charged. If the violation is established, the court may continue or revoke the probation and may require the probationer to serve the balance of the sentence imposed or any lesser sentence. If imposition of sentence was deferred, the court may impose any sentence which might originally have been imposed, *but credit shall be given for time served on probation.* [Emphasis added.]

Our Supreme Court in *Barnett v. Malley,* 90 N.M. 633, 567 P.2d 482 (1977) stated:

We follow the reasoning and holding in *Gagnon v. Scarpelli,* supra. We hold that the state authority charged with the responsibility for administering the probation and parole system has discretion to determine the need for counsel on a case-by-case basis.

Our Supreme Court was called upon in *Conston v. New Mexico St. Bd. of Probation and Parole,* 79 N.M. 385, 444 P.2d 296 (1968), to consider whether the authority granted the State Board of Probation and Parole in Section 31–21–14(C), *supra,* ["If violation is established, the board may continue or revoke the parole or enter any other order as it sees fit."] could be interpreted to allow the Board to determine that the time between the violation of parole and the time of the issuance of a warrant for the parolee's arrest and return could not be counted as time served on the sentence. The Supreme Court held:

While we recognize that the authority granted respondent to enter any order "as it sees fit" might seem to be sufficiently broad to permit the denial of credit as here undertaken, we cannot believe it was intended by the use of such language to grant unrestricted power. . . [T]he failure of the legislature to provide for denial of credit during period of unreasonable delay between knowledge of the violation and revocation, as specifically directed in cases of fugitives, indicates an intention not to deny credit for the period.

*Morrissey* mandates that there be a preliminary hearing for the purpose of establishing whether there are reasonable grounds for revocation and suggests that "it be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient." Our Supreme Court in Rule 20(d), N.M.R. Crim.P. set the times for holding probable cause examinations in criminal proceedings:

A preliminary hearing shall be held within a reasonable time but in any event not later than ten days following the initial appearance if the defendant is in custody and no later than twenty days if he is not in custody.

In my opinion, the time limits for holding parole and probation preliminary hearings need not be more restrictive.

The court held in *Morrissey* that an individual could waive a revocation hearing. It rationally follows that a preliminary hearing can be waived as well.

It should be noted that the amended motion to revoke appellant's probation was filed on July 6, 1978. He was arrested on July 22, 1978, and released on bond on August 3, 1978. The hearing at which appellant's probation was revoked was held on February 28, 1979.

The record does not indicate and he does not contend that he ever requested a preliminary hearing or that he requested that the revocation hearing be held within any specified time. He does not contend that he was prejudiced by the failure to grant him a preliminary hearing. His sole argument is that he was prejudiced by the length of the delay in holding the revocation hearing. Considering the nature of this type of proceeding and considering that appellant was given credit for the time served on probation, it is my opinion that absent a showing of prejudice he cannot be heard to complain about the delay in holding the revocation hearing. It is also my opinion that he waived any right to a preliminary hearing by not requesting one.

Appellant's second point of error is that the court erred in denying his motion to dismiss the amended motion to revoke pro-

bation and impose sentence because the conditions of his probation were so general and insufficient that they would not support a revocation of probation and furthermore that the conditions were not adopted pursuant to statutory prescription.

The conditions attached to appellant's probation were the following:

1. That the defendant voluntarily commit himself to the Alcoholic Treatment Center in Las Vegas, New Mexico.

2. That the defendant report to the .Adult Probation Office of this Court or whomsoever they may designate at such times and places as they may direct, and that he abide by their rules and regulations.

3. That the defendant obey all municipal, state and federal laws.

4. That the defendant not associate with any known users of controlled substances.

Specifically, the appellant argues that the manner of reporting to the Adult Probation Office was not spelled out in the order but was delegated to the Probation Department "to be established in accordance with its own rules and regulations." Section 31–20–6(E), N.M.S.A.1978 provides:

The district court shall attach to its order deferring or suspending sentence such reasonable conditions as it may deem necessary to insure that the defendant will observe the laws of the United States, the various states and the ordinances of any municipality. The defendant upon conviction may be required:

E. to be placed on probation under the supervision, guidance or direction of probation authorities for a term not to exceed that of the maximum sentence prescribed by law for the commission of the crime for which he was convicted;

. . .

The amended motion to revoke probation and impose sentence recites in pertinent part:

2. That the defendant has violated Judgment and Sentence Probation Condition 2 in that he did not abide by the

rules and regulations of his probation agreement in that he has failed to provide and submit monthly reports to his probation officer for the months of April, May, and June, 1978.

The following finding was made by the court as a result of the revocation hearing held on February 28, 1979:

. . . the court having heard the evidence and arguments of counsel, . . hereby finds that the defendant has violated the lawful terms of his probation in that he failed to submit required monthly reports for April, May, and June of 1977 [sic] and finds such violation to be established beyond a reasonable doubt.

Appellant does not contend that he did not understand the conditions attached to his probation nor does he deny that he did not submit the monthly reports. The conditions, in my opinion, were reasonable, unambiguous and in full compliance with Section 31–20–6, *supra.*

I would affirm the probation revocation.