This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.                             **NO. 28,654**

**RONALD DARBY,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Don Maddox, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**CASTILLO, Judge.**

Defendant appeals from the district court's order denying his motion to dismiss the State's petition to revoke his probation. Defendant was taken into custody on a suspected probation violation where he remained incarcerated for fifteen months before the district court held a probation revocation hearing. Defendant argues that the untimely hearing violated his right to due process and that, as a result, the petition to revoke his probation should have been dismissed. Because Defendant has not shown that under these unique circumstances he was prejudiced by the delay, we affirm.

**BACKGROUND**

Defendant was convicted, pursuant to a plea agreement, for two counts of both burglary and larceny, and sentenced to seven and one-half years imprisonment with three years suspended, followed by three years of supervised probation to run concurrent with two years of parole. After serving the four and one-half years in prison, on December 21, 2006, Defendant was released on supervised probation. Thirty-nine days later, Defendant was terminated from a residential program, which the probation agreement required him to complete, for violating a major program rule. The same day, January 29, 2007, Defendant was arrested and transported to the

Lincoln County Detention Center. Almost a month later, on February 26, 2007, the Probation and Parole Division of the Corrections Department submitted a report of Defendant's violation to the district court. The report noted that Defendant had been discharged from another treatment program on January 3, 2007, for "displaying behavior not conducive to the program." On May 16, 2007, the Hobbs District Attorney's Office received a faxed copy of the probation violation report. On May 24, 2007, the State filed a motion to revoke Defendant's probation and a request for an arrest warrant. That day, the district court issued a bench warrant for his arrest, even though Defendant had been incarcerated for the parole violation for four months by that time. On January 8, 2008, Defendant filed a motion to dismiss revocation proceedings for the State's failure to commence revocation of his probation in a timely manner as required by Rule 5-805 NMRA and to quash the bench warrant filed in May 2007.

On March 25, 2008, the district court scheduled Defendant's arraignment on the probation violation. On March 31, 2008, the date of the arraignment, Defendant's counsel entered an appearance and a demand for a timely probation hearing under NMSA 1978, Section 31-21-15(B) (1989). On April 1, 2008, defense counsel filed a motion to dismiss for the failure to prosecute, pursuant to Rule 5-805. The district court held a hearing on Defendant's motion to dismiss on April 14, 2008, fifteen

months after Defendant's incarceration for the alleged probation violation. At the hearing on his motion, Defendant admitted to the allegations that he violated the terms of his probation. The district court denied Defendant's motion to dismiss, but it did not revoke Defendant's probation. The district court released Defendant from custody that day on supervised probation under his original probation terms and gave him credit for time served successfully on probation. Defendant appeals the district court's denial of his motion to dismiss.

**DISCUSSION**

At the time the State filed the motion to revoke Defendant's probation, the controlling law in effect was Section 31-21-15. A week after the motion to revoke was filed, the Supreme Court established specific time limits for holding an adjudicatory hearing on the State's allegation of a probation violation as embodied in Rule 5-805(H). We analyze this case under Section 31-21-15 and the scant case law interpreting the statute. Section 31-21-15 does not contain any specific time for holding the probation revocation hearing. It permits the district court to issue a warrant for the arrest of a probationer and is intended to provide the probationer notice to appear to answer to the charge of the violation. *See* § 31-21-15(A)(1) & (2). Section 31-21-15(A)(3) & (B) states in pertinent part:

> (3) . . . Upon arrest and detention, the director [of the Corrections Department] shall immediately notify the court and submit

4

in writing a report showing in what manner the probationer has violated the conditions of release.

> B. The court shall then hold a hearing, which may be informal, on the violation charged.

This Court has interpreted the language in subsection B to be "a mandatory duty imposed upon the court to hold a revocation hearing immediately after (1) the probationer is taken into custody . . . or (2) a notice to appear to answer a charge of violation is personally served upon the probationer . . . or (3) the probationer is arrested[,]" and the violation report is filed in district court. *State v. Chavez (Chavez I)*, 94 N.M. 102, 104, 607 P.2d 640, 642 (Ct. App. 1979). In *Chavez I*, this Court concluded that the seven-month delay after the defendant's arrest was unreasonable and denied the defendant procedural due process. *See Chavez I*, 94 N.M. at 105, 607 P.2d at 643.

We later questioned the validity of *Chavez I*, explaining that the opinion was "unduly restrictive as a general proposition, and contrary to prior New Mexico decisions on the question of delay in the absence of any showing of prejudice to the defendant resulting from delay not occasioned by [the] defendant himself." *State v. Sanchez*, 94 N.M. 521, 524, 612 P.2d 1332, 1335 (Ct. App. 1980). *Sanchez* clarified that a probation revocation hearing "is not a trial on a criminal charge," but rather "a hearing to determine whether, during the probation or any parole period, the defendant

has conformed to or breached the course of conduct outlined in the probation or parole order." *Id.* at 523, 612 P.2d at 1334. As a result, the right afforded to the criminally accused to a speedy, public trial is not applicable. *Id.* Thus, "[t]he issue before us is not one of speedy trial, but due process." *Id.* Also,"the full panoply of rights owed a criminal defendant under the due process clause" is not applicable to these probation revocation proceedings. *Id.* (internal quotation marks and citation omitted).

In *State v. Chavez (Chavez II)*, 102 N.M. 279, 282, 694 P.2d 927, 930 (Ct. App. 1985), this Court articulated more defined factors to be considered in determining whether a probation revocation hearing satisfied the less than complete due process rights afforded probationers. Not unlike the speedy trial factors, we consider the length of delay, the reasons for the delay, the prejudice to the defendant, and the defendant's failure to request an earlier hearing or his contribution to the delay. *See id.* (emphasizing the requirement of showing delay with resulting prejudice and stating that "[t]he burden of showing actual prejudice by delay in the initiation or prosecution of proceedings to revoke probation rests upon the probationer").

In the present case, Defendant was in custody for fifteen months before his probation revocation hearing. As we recounted above, extraordinary delays in many steps of the proceedings below followed Defendant's arrest. We note, however, that Defendant did not assert his due process right to a timely hearing until December 11,

2007, at the earliest, and January 8, 2008, at the latest. This request was made nearly a year after his arrest, past the time that the most appropriate remedy of a speedy hearing could have been granted. Of primary importance to this case, however, is the unique absence of any recognized factual assertion of prejudice to Defendant arising out of the extraordinary delay.

Although our case law gives little guidance on what constitutes a proper showing of prejudice, it is clear that Defendant's claim of prejudice is speculative, at best. Defendant argues that he was prejudiced by the delay because his extended incarceration diminished the time for him to complete the one-year drug treatment program required by his probation agreement. Even assuming this could constitute a valid claim of prejudice, Defendant provides this Court with no reason to presume that the remaining probationary period—at least eighteen months—is insufficient to complete a one-year program. Also, Defendant does not refer this Court to any authority indicating that a truncated probationary period that is adequate to satisfy a condition of probation is a cognizable form of prejudice. In addition, since Defendant's re-release on probation following the revocation hearing, he has given this Court no indication that the State has pursued revocation for his inability to complete the year-long drug treatment program. *See* Rule 12-209(C) NMRA (permitting the parties to modify the record to reflect any events affecting the

appellate claims). Accordingly, we are not persuaded that Defendant suffered prejudice under the unique facts of this case. *Cf. Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (stating that the loss of an inmate's eligibility for rehabilitative services does not activate due process).

A claimed deprivation of procedural due process caused by delay generally requires a showing that the delay resulted in prejudice to the defense. *See, e.g.*, *State v. Palmer*, 1998-NMCA-052, ¶ 4, 125 N.M. 86, 957 P.2d 71 (stating that to prove a procedural due process violation from pre-indictment delay "the defendant must show prejudice to his or her defense as a result of the delay and . . . that the state intentionally caused the delay in order to gain a tactical advantage"); *see also State v. DeBorde*, 1996-NMCA-042, ¶ 14, 121 N.M. 601, 915 P.2d 906 (holding that due process requires a showing that a claimed discovery violation in probation revocation proceedings prejudiced the defense and thus the outcome of the trial); *Chavez II*, 102 N.M. at 282, 694 P.2d at 930 (requiring a showing of "actual prejudice" by the delay in the pursuit of probation revocation proceedings). Even where the constitutional right to a speedy trial is being enforced, our case law expresses overriding concern with the "actual prejudice" that delay may cause to a defense. *See, e.g.*, *State v. Garza*, 2009-NMSC-038, ¶¶ 12, 22, 36-40, 146 N.M. 499, 212 P.3d 387. Therefore, we examine whether Defendant has shown that the delay prejudiced his ability to

contest revocation, and conclude that he has not.

As we stated above, Defendant admitted to the State's allegation that he violated probation at the hearing on his motion to dismiss and waived his right a hearing on the allegation. As a result, we see no manner in which the delay prejudiced Defendant's ability to contest revocation, and Defendant makes no argument that he could have shown prejudice to his defense if he chose to contest it.

Defendant argues that the extraordinary length of delay in holding the adjudication hearing in this case is sufficient to warrant a dismissal of the State's motion to revoke probation. Other than the procedural due process claim discussed above, Defendant failed to assert any other legal basis in support of this theory. In *Sanchez,* we recognized New Mexico's commitment to protect a defendant under the theory of waiver from unreasonable delays between arrest and subsequent probation revocation hearings. *Sanchez*, 94 N.M. at 524, 612 P.2d at 1335 (recognizing that an unreasonable delay would result, as a matter of law, in the state's waiver of the defendant's violations.) Defendant failed to raise the theory of a possible waiver by the State in the lower court proceedings, and we will not address this issue for the first time on appeal. *State v. Jade G.*, 2007-NMSC-010, ¶ 24, 141 N.M. 284, 154 P.3d 659 (acknowledging the general rule that "propositions of law not raised in the trial court cannot be considered sua sponte by the appellate court" (internal quotation marks and

citation omitted)).

Given the absence of any prejudice to the adjudication of Defendant's probation violation, we conclude that the untimely probation violation hearing in this case did not violate Defendant's procedural due process rights. We do not intend to understate the significance of the State's delay in prosecuting its allegation of a probation violation or give license to the State to ignore a defendant's rights to an immediate adjudication of an alleged probation violation. Given the uniqueness of the relief the district court granted Defendant and the Supreme Court's subsequent adoption of Rule 5-805 mandating specific time lines for probation revocation proceedings, we expect these circumstances will not recur. However, we take this opportunity to remind the State to respect the numerous procedural factors that normally arise to establish prejudice where a lengthy delay occurs in the adjudication of an alleged probation violation.

**CONCLUSION**

Although Defendant endured extraordinary delay in the probation revocation proceedings, he has not established prejudice under the circumstances. As a result, we affirm the district court's rulings.

**IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Judge**

**I CONCUR:**


_____

**TIMOTHY L. GARCIA, Judge**


**MICHAEL E. VIGIL, Judge (specially concurring)**

**VIGIL, Judge (specially concurring).**

Defendant was arrested for an alleged violation of his probation and held in prison on that allegation for more than fourteen months before he was allowed to see a judge on the charge. I write separately to emphasize that our opinion in this case should not be construed, explicitly or implicitly, to condone such conduct. Our opinion correctly decides the only issue presented, which is whether Defendant was deprived of his constitutional right to a speedy hearing on the motion to revoke probation. However, the facts of this case cannot be ignored.

I would have thought that in this day and age in New Mexico, such conduct would be considered intolerable and contrary to our constitutional concepts of ordered liberty. Perhaps it is easier to say "no harm, no foul" because Defendant in the end received credit for all the time he was imprisoned, and he was released from prison when he finally received a merits hearing. Moreover, even as we file this opinion, Defendant's term of probation has already expired. However, once we as a society allow a citizen to be arrested and kept in jail for fourteen months before being allowed to see a judge on the charge for which he or she was arrested, we begin a dangerous journey, endangering our precious constitutional rights and freedoms. Ignoring what happened in this case is the first step of that journey.

I therefore write separately, recognizing that we have not received briefs from

12

either side on the question and that the issue I separately address has not been argued to us in this case.

**FACTS**

The Lea County District Court sentenced Defendant to the Department of Corrections for a prison term of seven and one-half years, with all of the sentence suspended except for four and one-half years, followed by two years of parole. The judgment and sentence further directed that upon release from confinement, Defendant be placed on supervised probation for a period of three years, to be served concurrent with Defendant's parole.

After serving the term of imprisonment, Defendant was placed under supervised probation for three years, beginning on December 21, 2006, and ending on December 20, 2009. On February 28, 2007, Defendant's probation officer prepared a report of probation violation alleging that Defendant violated a condition of his probation on January 29, 2007. Defendant was arrested for the alleged probation violation on that same day, January 29, 2007, and taken to the penitentiary. Defendant remained in the penitentiary from the time he was arrested on January 29, 2007, until April 1, 2008, when he was taken to the Lea County Detention Center.

No further action was taken to bring the matter before a court until the report of probation violation was sent to the district attorney in May 2007. On May 24,

2007, the State finally filed a motion to revoke Defendant's probation, and an arrest warrant for the alleged probation violation was issued the same day. It would not be served for almost another year. On December 11, 2007, Defendant filed a pro se request for a hearing on the motion to revoke probation and, on January 8, 2008, Defendant filed a pro se motion to dismiss and to quash the arrest warrant, together with a request for hearing. Defendant was in prison when he prepared and filed these pleadings. The basis for the motion to dismiss was that the State had failed to timely commence the revocation proceedings as required by Rule 5-805. Defendant was not arrested on the May 24, 2007 bench warrant until March 22, 2008.

An arraignment on the motion to revoke probation was finally held on March 31, 2008, and with the advice of appointed counsel, Defendant denied the allegation. This March 31, 2008 hearing was the first time Defendant was ever brought to court to appear before a judge on the allegation he violated probation, since being arrested on January 29, 2007, for allegedly violating a condition of his probation. This also appears to be the first time Defendant had an opportunity to confer with an attorney about the allegation. It is a time span slightly in excess of fourteen months. The merits hearing was then held two weeks later on April 14, 2008.

**DISCUSSION**

In *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973), the United States Supreme

Court recognized that probation revocation, like parole revocation, results in a loss of liberty. Accordingly, the Court held, "[A] probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey v. Brewer*, [408 U.S. 471 (1972)]." In *Morrissey*, the Court recognized that while parole revocation does not deprive an individual of the absolute liberty to which every citizen is entitled, but only of the conditional liberty which depends on satisfying parole conditions, it nevertheless results in a serious loss of liberty. *Id.* at 480.

The Court therefore held that minimal due process requires "that some minimal inquiry be conducted at or reasonably near the place of the alleged parole [or probation] violation or arrest and *as promptly as convenient* after arrest while information is fresh and sources are available." *Id.* at 485 (emphasis added). The purpose of such a hearing is in the nature of a preliminary hearing "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee [or probationer] has committed acts that would constitute a violation of parole conditions." *Id.*

Further, "the determination that reasonable ground exists for revocation of parole [or probation] should be made by someone not directly involved in the case" because the supervising parole or probation officer who is directly involved in making recommendations "cannot always have complete objectivity in evaluating them." *Id.*

at 486. At the preliminary hearing before this independent officer,

> [T]he parolee [or probationer] should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole [or probation] violation. The notice should state what parole [or probation] violations have been alleged. At the hearing the parolee [or probationer] may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer. . . .
>
> The hearing officer shall have the duty of making a summary, or digest, of what occurs at the hearing in terms of the responses of the parolee and the substance of the documents or evidence given in support of parole [or probation] revocation and of the parolee's [or probationer's] position. Based on the information before him, the officer should determine whether there is probable cause to hold the parolee [or probationer] for the final decision of the parole board [or court] on revocation. *Such a determination would be sufficient to warrant the parolee's [or probationer's] continued detention and return to the state correctional institution pending the final decision.*

*Id.* at 486-87 (emphasis added). Following the preliminary hearing, due process entitles a parolee or probationer to a final hearing for a "final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Id.* at 488.

The requirement of *Gagnon* and *Morrissey* for a prompt determination of probable cause to justify continued imprisonment has been repeatedly reiterated by the Supreme Court in the context of a warrantless arrest. In *Gerstein v. Pugh*, 420 U.S. 103, 105-06 (1975), Florida procedures allowed a person arrested without a warrant to remain in jail for thirty days or more without a judicial determination of

16

probable cause. Recognizing that "[t]he consequences of prolonged detention may be more serious than the interference occasioned by arrest," *id.* at 114, the United States Supreme Court declared the Florida procedures unconstitutional, stating that a state "must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and *this determination must be made by a judicial officer either before or promptly after arrest.*" *Id.* at 125 (emphasis added) (footnote omitted). Significant to our case, the Supreme Court in *Gerstein* discussed the preliminary hearing requirement established by *Gagnon* and *Morrissey* and noted that probation and parole revocation proceedings "may offer less protection from initial error than the more formal criminal process[.]" *Gerstein*, 420 U.S. at 122 n.22. Thus, the Supreme Court suggested there is a greater need for a prompt determination of probable cause in a probation violation context.

In *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991), the Supreme Court held that providing a judicial determination of probable cause within forty-eight hours of arrest will, generally, comply with the *Gerstein* promptness requirement. However, the Court also said that if the arrested person could establish that the probable cause determination was delayed unreasonably, the constitution would be violated even if the hearing was held within forty-eight hours of arrest. *Riverside*, 500 U.S. at 56. "Examples of unreasonable delay are delays for the purpose of gathering

17

additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *Id.*

Thus, it can hardly be questioned that due process requires that a probationer who is arrested and charged with violating probation be promptly brought before a judge. Courts in other cases have recognized and applied this fundamental principle. All that is necessary here is to point out a few.

In *State v. Flemming*, 907 P.2d 496 (Ariz. 1995) (in banc), the defendant was on probation on a Maricopa County case when he was arrested in Pinal County. *Id.* at 498. Based on the Pinal County arrest, the Maricopa County probation department filed a motion to revoke probation and, because of the defendant's status as a probationer, he was held in the Pinal County jail without bond. *Id.* Defendant entered into a plea agreement on the Pinal County charges, and he was transported to the department of corrections to begin serving his prison term. *Id.* Concerned that he might become eligible for parole and find the Maricopa matter still pending, the defendant requested a hearing. *Id.* The Maricopa County district attorney then petitioned to bring the defendant before the court on the probation violation. *Id.* However, this was more than twenty-seven months after the petition to revoke probation was originally filed. *Id.* The Arizona Supreme Court held that its rule governing time periods to hold a probation revocation hearing and the defendant's

18

constitutional due process right to a prompt hearing were both violated. *Id.* at 501-02. Significantly, the court also concluded that the defendant's incarceration on the Pinal County charges did not negate his constitutional right to a prompt hearing on the Maricopa County probation violation charge. *Id.* at 502-03.

Similarly, the Appellate Court of Illinois held that a four-year delay in proceeding on a petition to revoke the defendant's probation while he was incarcerated on another offense violated due process. *People v. White*, 653 N.E.2d 426, 427-28 (Ill. App. Ct. 1995); *see also People v. Bredemeier*, 805 N.E.2d 261, 265-66 (Ill. App. Ct. 2004) (affirming the trial court order dismissing the petition to revoke probation because due process was violated where the state delayed prosecuting the petition to revoke probation for six years while the defendant was in prison in another state, the state knew where the defendant was, the defendant had asked for a hearing, and the defendant lost the opportunity to have his out-of-state sentence and sentence for the probation violation to be served concurrently); *State v. Curtis*, 209 P.3d 753, 758, 763 (Kan. Ct. App. 2009) (concluding that delay in pursuing a probation violation adjudication violates due process in Kansas where the delay is unreasonable and prejudices the defendant, or, alternatively, where there is an indication the state has waived its right, and holding that a twenty-one-month delay in adjudicating the probation violation charge constituted a violation of due process); *State v. Martens*,

338 So. 2d 95, 96-97 (La. 1976) (concluding revocation of probation was improper where the motion to revoke probation was filed on the last day of the defendant's probation, the state took no action to serve the warrant for nine months, although the defendant was in custody on a drug conviction, and the state did not seek a probation violation hearing until after the defendant completed serving his sentence on the drug conviction).

The record indicates that Defendant was returned to prison for a parole violation. However, the record also indicates that the same act constituted the parole violation as the probation violation. Defendant was arrested for the probation violation on the same day that the act occurred and, within a month, Defendant's probation officer prepared a probation violation report. The fact that Defendant may have been imprisoned on a parole violation does not excuse the failure to proceed on the probation violation. If the State wished to proceed with a probation violation case, it had an obligation to comply with due process as to that case. *Fleming*, *White*, *Bredemeier*, and *Martens*, discussed above, all teach that a defendant's incarceration on one matter will not excuse complying with due process on a probation violation case.

There is no New Mexico case directly on point. In *Chavez I*, the defendant was arrested on the motion to revoke probation violation on July 22, 1978, and following

20

a hearing on a motion for release, the defendant was released on August 2, 1978, on terms and conditions pending resolution of the motion to revoke probation. 94 N.M. at 102-03, 607 P.2d at 640-41. In *Chavez II*, the defendant was arrested on the motion to revoke probation on January 13, 1984, and the court set a bond which the defendant was unable to post. 102 N.M. at 281, 694 P.2d at 929. The evidentiary hearing on the motion to revoke probation was then held the following month on February 10, 1984. *Id.* In this case, Defendant was held in prison for over fourteen months before he was allowed to see a judge on the probation violation charge. Under the circumstances, it seems that the following language from *State v. Murray* would seem applicable:

> If there has been unreasonable delay in the issuance and execution of a warrant against a probation violator whose whereabouts is known or could be known with reasonable diligence, and the violator's return is possible, the probation authorities, as a matter of law, have waived [the] defendant's violations.

81 N.M. 445, 450, 468 P.2d 416, 421 (Ct. App. 1970) (citation omitted).

It is fundamental that a prolonged detention following an arrest without an appearance before a judge or magistrate violates due process. I respectfully submit that the conditional liberty of a probationer is subject to the same dictates of due process. The adoption of Rule 5-805 by our Supreme Court should prevent in future cases what occurred here. However, as our opinion points out, this rule was not yet in effect for Defendant's case.

**CONCLUSION**

For the reasons stated, I therefore specially concur as to the issue that was brought before us in this case.

_____

**MICHAEL E. VIGIL, Judge**