2004-NMCA-137

103 P.3d 54

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Michael PONCE, Defendant–Appellant.**

No. 23,193.

Court of Appeals of New Mexico.

Sept. 21, 2004.

Certiorari Granted, No. 28,917, Dec. 6, 2004.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

John B. Bigelow, Chief Public Defender, Laurel A. Knowles, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} While meeting his appointment with his probation officer, Defendant Michael Ponce was arrested for a probation violation. He had tested positive for alcohol three days earlier. The probation officer conducted a patdown search that produced vehicle keys which then ultimately led to a search of Defendant's vehicle where cocaine was found. Defendant appeals the denial of his motion to suppress. He attacks the arrest and the search. We affirm.[1]

### BACKGROUND

{2} Defendant was on probation for prior aggravated assault and aggravated battery convictions. A special condition of his proba-

---

1. This opinion follows our grant of the State's motion for rehearing as to our opinion filed February 19, 2004. We withdrew that opinion by order entered April 2, 2004. We substitute this opinion in its stead.

tion required him to participate in the Probation and Parole Division's (PPD) Intensive Supervision Program (ISP). *See* NMSA 1978, § 31–21–13.1(A) (1991) (defining intensive supervision programs for probation). Another special condition of Defendant's probation was that he was not allowed alcohol. When Defendant reported to the PPD office on February 8, 2001, he was arrested because a urinalysis performed three days earlier, on February 5, 2001, and received by the probation office on February 7 or 8, 2001, was positive for alcohol. The arrest was pursuant to an "arrest order" prepared by Probation Officer Garnand on which Officer Garnand checked off boxes indicating that Defendant was arrested both because he was a risk to himself and a risk to the public.

{3} A patdown was conducted after Defendant was arrested, producing $985 in cash, two cell phones, and a set of car keys. Officer Garnand asked Defendant how he came to get that kind of money, and Defendant said that he had picked up his last paycheck. The officer thought the sum of money was unusual because she thought based on a conversation with Defendant that Defendant was not employed.[2] Defendant was also asked how he had arrived at the probation office, and Defendant said that his friends had dropped him off. Another probation officer, Officer Borunda, took Defendant's keys outside and matched what appeared to be a Chevrolet key to a Chevrolet Suburban in the parking lot across the street by trying the key in that vehicle's door lock and unlocking the door with the key. Afterwards, Officer Borunda told Officer Garnand about the match, and Officer Garnand asked Defendant if the vehicle belonged to Defendant and why he had lied about how he got to the office. Officer Garnand did not recall what Defendant stated, other than that Defendant admitted the vehicle was his. Probation officers then searched the vehicle and discovered contraband, after which a police officer was summoned and filed a criminal complaint against Defendant.

{4} Defendant sought suppression of the evidence obtained from the search of the vehicle on the grounds his rights under the United States and New Mexico Constitutions were violated. He asserted in his motion (1) that he was arrested in violation of New Mexico Probation and Parole Division (PPD) Administrative Regulation PPD–215 which sets out PPD policy and procedure regarding arrests of petitioners, and (2) that the searches of Defendant and his vehicle were conducted in violation of PPD Regulation PPD–214 which sets out policy and procedure regarding searches, in that the probation officer did not have reasonable cause to determine if one of the keys in Defendant's possession unlocked any of the vehicles in the parking lot outside, and did not have reasonable cause to search inside the vehicle. After an evidentiary hearing, the district court denied Defendant's motion to suppress on the ground that the probation officers had reasonable cause to arrest Defendant and search the vehicle.

{5} Defendant raises two points on appeal: (1) the arrest and searches were unconstitutional because they violated standards in the probation division regulations; and (2) the probation officers failed to read him his *Miranda* rights before questioning him after his arrest.

## DISCUSSION

### Standard of Review and Burdens

{6} We review the legality of a seizure and of a subsequent search questioned in a suppression hearing as mixed questions of law and fact, we review any factual questions under a substantial evidence standard, and we review the application of law to the facts de novo. *State v. Reynolds*, 119 N.M. 383, 384, 890 P.2d 1315, 1316 (1995); *State v. Werner*, 117 N.M. 315, 316–17, 871 P.2d 971, 972–73 (1994); *State v. Attaway*, 117 N.M. 141, 144–45, 870 P.2d 103, 106–07 (1994). In reviewing the application of law to facts, we view the facts in a manner most favorable to the prevailing party. *State v. Jason L.*, 2000–NMSC–018, ¶ 10, 129 N.M. 119, 2 P.3d 856; *State v. Boeglin*, 100 N.M. 127, 132, 666 P.2d 1274, 1279 (Ct.App.1983).

---

**2.** At the suppression hearing, the State stipulated that Defendant was in fact employed and his last paycheck in the sum of $558.38 was issued on February 2, 2001.

{7} A defendant moving to suppress evidence has the burden to come forward with evidence to raise an issue as to an illegal search and seizure. *State v. Gardner,* 95 N.M. 171, 175, 619 P.2d 847, 851 (Ct.App. 1980). In the face of a defendant's challenge to the constitutionality of a warrantless arrest or search, the State is required to present testimony or other evidence showing that the arrest or search met constitutional muster. *See State v. Duran,* 2003–NMCA–112, ¶ 15, 134 N.M. 367, 76 P.3d 1124 ("[D]efendants have the burden to raise an issue as to their illegal search and seizure claims. Once they have done so, the burden shifts to the [S]tate to justify the warrantless search [or seizure]." (alteration in original) (internal quotation marks and citation omitted)), *cert. granted,* Sup.Ct. No. 28,241, 134 N.M. 320, 76 P.3d 638 (Sept. 3, 2003); *State v. Gallegos,* 2003–NMCA–079, ¶ 12, 133 N.M. 838, 70 P.3d 1277 ("It is the State's burden to prove the existence of circumstances justifying a warrantless search."), *cert. granted,* Sup.Ct. No. 28,068, 133 N.M. 771, 70 P.3d 761 (Jun. 6, 2003); *State v. Diaz,* 1996–NMCA–104, ¶¶ 8–9, 122 N.M. 384, 925 P.2d 4 (stating that "[a] search and seizure conducted without a warrant is unreasonable unless it ... fall[s] within one of the exceptions to the warrant requirement" and that under the consent exception, the State "has the burden of establishing common authority"); *State v. Valencia Olaya,* 105 N.M. 690, 694, 736 P.2d 495, 499 (Ct.App.1987) ("The government has a heavy burden when it seeks to justify warrantless arrests and searches.").

### Applicable Probation–Related Statutes, Regulations, and Orders

{8} "Probation is the release by the court without *imprisonment* of an adult defendant convicted of a crime." *State v. Chavez,* 94 N.M. 102, 103, 607 P.2d 640, 641 (Ct.App.1979) (internal quotation marks omitted). It constitutes "a form of conditional liberty intended to alleviate the aspects of punishment by incarceration," and "[i]t offers rehabilitation and restoration to society." *Id.* "The broad general purposes of probation are education and rehabilitation" of the defendant. *State v. Donaldson,* 100 N.M. 111, 119, 666 P.2d 1258, 1266 (Ct.App.1983). It is

an act of clemency and is not meant to be painless. *Id.* In order to effectuate a probationer's rehabilitation, a sentencing court may impose conditions that have as their objective the deterrence of further misconduct. *Id.*

{9} The Legislature has expressly determined procedures to bring a person on probation before the court for violation of a condition of probation. Under NMSA 1978, § 31–21–15(A) (1989), three alternative procedures may be employed: (1) a court-issued warrant; (2) a court-issued notice to appear; and (3) arrest without a warrant by an authorized probation officer: The third alternative, in pertinent part, reads:

the director [of the field services division of the corrections department or any employee designated by him] may arrest a probationer without warrant or may deputize any officer with power of arrest to do so by giving him a written statement setting forth that the probationer has, in the judgment of the director, violated the conditions of his release. The written statement, delivered with the probationer by the arresting officer to the official in charge of a county jail or other place of detention, is sufficient warrant for the detention of the probationer.

§ 31–21–15(A)(3); NMSA 1978, § 31–21–5(E) (1991).

{10} The "board," presumably the parole board, is required under NMSA 1978, § 31–21–21 (1963) to "adopt general regulations concerning the conditions of probation which apply in the absence of specific conditions imposed by the court." *See* § 31–21–5(D); NMSA 1978, § 33–1–7 (1977). Section 31–21–21 further reads:

All probationers are subject to supervision of the board unless otherwise specifically ordered by the court in the particular case. Nothing in the Probation and Parole Act [31–21–3 to 31–21–19 NMSA 1978] limits the authority of the court to impose or modify any general or specific condition of probation. The board may recommend and by order the court may impose and modify any conditions of probation. The

court shall transmit to the board and to the probationer a copy of any order.

(Alteration in original.) In *Gardner*, in addressing differences between (1) search provisions contained in a State of New Mexico Probation Department's Manual of Instructions for Officers and (2) a probation order entered in the case before the Court on appeal, this Court held that Section 31–21–21 authorized specific court-imposed conditions of probation, and that those conditions of probation override administrative regulations. *Gardner*, 95 N.M. at 173–74, 619 P.2d at 849–50.

{11} PPD Regulation 215 states a policy that PPD arrest orders "are authorized when there is sufficient evidence to indicate a possible serious or repeated pattern of violation of conditions of probation or parole and there is a compelling need for detaining the offender, or the offender is a risk to public or individual safety." PPD Regulation 215 procedures are contained in PPD Regulation 215.1 and 215.2. The pertinent part of PPD Regulation 215.1 provides that officers who are authorized to arrest offenders may do so "in an emergency" when certain conditions exist, including:

3. Instances in which a serious violation of parole or probation is evident and circumstances preclude the arrest being carried out by a law enforcement officer.

4. The offender is an immediate threat of causing injury to himself or others.

The pertinent part of PPD Regulation 215.2 states that arrest orders are for use to detain "an offender for a serious or continued probation … violation[ ], or when investigating such violation[ ]." This regulation also provides that arrest orders "should not be used for any other purpose except as otherwise stated in Department policy and/or approved by the Director." Defendant does not challenge the authority of Officer Gernand to issue the arrest order.

{12} PPD Regulation 214 describes PPD's policy and procedure for a search of a probationer's person and property. PPD Regulation 214 states the following policy:

Staff of the [PPD] may conduct searches of offenders, their homes, or other personal property, and seize evidence indicating violations of conditions of probation … when there is *reasonable cause* to believe that the offender is in possession of prohibited items or that evidence of a violation of their conditions of probation … will be found. Staff of the PPD may also conduct a pat search of the offender and search of the immediate area at the time of arrest … to ensure the officers' safety and that no evidence of a violation is destroyed.

The regulation defines a reasonable cause search as "[a] search in which available evidence would lead a reasonable person to believe that the offender is in possession of prohibited items or that evidence of a violation will be found." PPD Regulation 214 procedures are contained in PPD Regulation 214.1. This regulation states in pertinent part:

If an officer has reasonable cause to believe that an offender is in possession of prohibited items (either by condition or statute), or evidence of a violation will be found, and emergency conditions do not exist, the officer should promptly report the matter to their supervisor, and seek the assistance of a law enforcement agency in conducting the search.

{13} In the present case, Defendant signed a probation court order containing standard and special conditions. A special condition of the probation order was "No Alcohol." Another special condition of the probation order required Defendant to participate in the ISP. *See* § 31–21–13.1(A) (enabling intensive supervision programs to "provide highly structured and intense supervision, with stringent reporting requirements, of certain individuals who represent an excessively high assessment of risk of violation of probation"). Defendant also signed an ISP agreement containing standards of intensive supervision. Defendant agreed to abide by the terms of the ISP agreement. The ISP agreement provided that Defendant was required to comply with his general and special conditions of probation, in addition to specific standards in the ISP agreement. The ISP agreement also provided that Defendant will not consume intoxicating beverages at any time.

{14} With regard to arrests, the probation order provided that a warrant could be issued for Defendant's arrest for any probation violation and that "[w]hen acting in accordance with official policy and New Mexico law, your Probation Officer has the authority to have you arrested without a warrant." The ISP agreement provided that the ISP officer can issue an arrest order at any time for a violation of the probation conditions or non-compliance with the ISP standards.

{15} With regard to searches, the probation order required Defendant to "permit a warrantless search, by a Probation Officer, of your person, automobile, residence, property and/or living quarters if he/she has reasonable cause to believe that such a search will produce evidence of a violation of your conditions of probation." In the ISP agreement, Defendant agreed to "submit to a search of [his] person, residence and personal belongings, including automobile, by the Intensive Supervision Officer upon request."

### Constitutional Standards

■ {16} Warrantless probation searches and seizures must comply with the reasonableness components of the Fourth Amendment and of Article II, Section 10, of the New Mexico Constitution. *See United States v. Knights*, 534 U.S. 112, 122, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) (holding warrantless search of probationer's home was reasonable within the meaning of the Fourth Amendment because it was supported by reasonable suspicion and authorized by a condition of probation); *Griffin v. Wisconsin*, 483 U.S. 868, 872–73, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (holding warrantless search of probationer lawful where it was authorized by a condition of probation itself reasonable within the meaning of the Fourth Amendment); *State v. Marquart*, 1997–NMCA–090, ¶ 19, 123 N.M. 809, 945 P.2d 1027 (stating, in determining that the exclusionary rule applies to probation revocation proceedings under the New Mexico Constitution, that the "ruling ... does not prevent a court from imposing as a condition of probation that the probationer give his or her consent to reasonable warrantless searches by a probation officer to ensure compliance with the condi-

tions of probation" (emphasis omitted)); *Gardner*, 95 N.M. at 174, 619 P.2d at 850 (stating that when limiting a probationer's rights by requiring the probationer to submit to a warrantless probation search, the search requirement must be reasonable "under the Constitution" and that "[t]he requirement to submit to a search at any time is subject to the requirement that the time be reasonable" (internal quotation marks omitted)).

### The Validity of the Arrest

{17} The State presented testimony regarding the positive-urine test result and an arrest order prepared by Officer Gernand, together with the officer's testimony that, with respect to the arrest order form, "[w]e usually check off risk to self, risk to public, repeated violations and things like that, whatever," and in this case "we checked off risk to self and risk to public." Also before the district court were the probation order and ISP agreement, which together permitted a warrantless arrest under certain circumstances pursuant to an arrest order issuable at any time for a violation of a condition of probation or non-compliance with the standards in the ISP agreement. Defendant does not contest the fact that his urine tested positive for alcohol. Nor does he contest the fact that the probation order together with the ISP agreement forbade him from consuming alcohol. Further, Defendant does not argue that PPD Regulation 215 is unauthorized or inconsistent with Section 31–21–15(A)(3). Defendant, in fact, asserts that PPD Regulation 215 is the minimum constitutional standard that applies with respect to his arrest.

{18} Defendant's constitutional argument flows as follows: While "a probationer may be arrested for violating some condition of his probation by an act that would not constitute a crime in an ordinary situation," such an arrest is reasonable only if "it can be shown that the person presents a danger to himself or the public, or that his conduct represented a serious or repeated pattern of violations danger," as stated in PPD Regulation 215. Even in intensive supervision circumstances, the official policy in PPD Regulation 215 requiring a possible serious or

repeated pattern of probation violations or a risk to public or individual safety must be proven by the State in order to justify an arrest. The State failed to establish these required grounds for his arrest.

{19} Defendant further argues that the PPD set the constitutional standard of reasonableness when it adopted the Regulation 215 standard, irrespective of how broad the probation order and ISP agreement might be read, and because the State did not actually show, based on Defendant's specific conduct prior to arrest, that there existed "a possible serious or repeated pattern of violation of conditions of probation ... and [that there was] a risk to public or individual safety," the constitutional reasonableness standard was not met. Consequently, because his arrest was not in conformity with PPD Regulation 215, Defendant contends the arrest violated the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. We are unpersuaded.

{20} Defendant, a high-risk potential probation violator, was placed in a statutorily-backed highly structured intensive supervision program with stringent reporting and compliance requirements, pursuant to the probation order and the ISP agreement. In our view, the determinative constitutional point is that Defendant's arrest was based on sufficient cause to pass muster under federal and State constitutional reasonableness standards. The arrest was by no means arbitrary or otherwise without reasonable basis. The probation officer knew that Defendant's urine had three days earlier tested positive for alcohol and knew that Defendant was prohibited under his probation conditions from consuming alcohol. The arrest having been based on this knowledge, we hold that the warrantless arrest was reasonable and constitutionally sufficient whether or not it was handled according to a more stringent administrative policy.

**The Validity of the Patdown and Vehicle Searches**

{21} Defendant contends that the probation officer did not have the reasonable cause required under PPD Regulation 214 to search his person or his vehicle. Like his arguments with regard to the arrest and PPD Regulation 215, Defendant asserts PPD set the constitutional standard for searches in PPD Regulation 214. Defendant does not attack the seizure of his keys during the patdown. He argues that the probation officer exceeded his patdown authority when he took the money from Defendant's pocket, since that seizure could not have been done for safety reasons. Defendant also argues that the patdown search was impermissible because the officer did not have reasonable cause to believe that the search might produce evidence of a probation violation or to ensure that no evidence of a violation was destroyed.

{22} In regard to the vehicle searches, citing the "reasonable cause" requirement contained in both PPD Regulation 214 and the probation order, Defendant asserts that the probation officer's insertion of one of the keys in the door lock of the Suburban was a search. Defendant argues that the fact he was carrying a set of keys with a car key and a substantial amount of money in his pocket did not give the probation officer reasonable cause to try the key in the vehicle lock. Implicit in Defendant's argument is that the later search inside the vehicle and the seizure of the contraband found in that search were the products of the illegal key-lock matching search.

{23} Again, we are unpersuaded. We hold that the patdown and searches were reasonable and constitutionally permissible. The warrantless patdown was reasonable and lawful as incident to the lawful arrest of Defendant for a violation of a condition of the probation order and a condition of his ISP agreement. *See United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (holding a search incident to arrest to be an exception to the warrant requirement as well as reasonable); *State v. Duffy,* 1998–NMSC–014, ¶ 61, 126 N.M. 132, 967 P.2d 807 (stating search incident to arrest is one of the recognized exceptions to the warrant requirement); *State v. Arredondo,* 1997–NMCA–081, ¶ 27, 123 N.M. 628, 944 P.2d 276 (stating the rule that "[a] search incident to a lawful arrest may fall under an

exception to the warrant requirement in the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution if the State meets its burden of proving that the search occurs as a contemporaneous incident to the lawful arrest of the defendant and is confined to the area within the defendant's immediate control"), *overruled on other grounds by State v. Steinzig,* 1999–NMCA–107, 127 N.M. 752, 987 P.2d 409.

{24} In regard to the key-lock matching issue, we note that several jurisdictions have determined that this activity does not constitute a search within the Fourth Amendment. *See United States v. Salgado,* 250 F.3d 438, 456–57 (6th Cir.2001) (holding that insertion of key found in vehicle used to transport drugs into lock in the defendant's apartment door was not a search); *United States v. Lyons,* 898 F.2d 210, 212–13 (1st Cir.1990) (holding that insertion of key obtained from the defendant in a search of his person into the lock securing a rented storage compartment not to be a search); *United States v. DeBardeleben,* 740 F.2d 440, 444–45 (6th Cir. 1984) (holding that insertion of key found in the defendant's possession after his arrest into the door and trunk locks of a car found in a parking lot and suspected to belong to the defendant not to be a search); *but see United States v. Portillo–Reyes,* 529 F.2d 844, 847–48 (9th Cir.1975) (stating insertion of key obtained from search of suspected drug smuggler into door lock of vehicle suspected as a drug "load car" parked in the area to be the "beginning of the search," where the search of the vehicle occurred immediately upon the unlocking of the door).

■ {25} We do not deem it necessary to decide whether the matching of the key to the lock constituted a search within the Fourth Amendment and Article II, Section 10. We assume, arguendo, that the matching did constitute a search, and hold that it was reasonable. The matching was done merely for the purpose of determining whether Defendant's key unlocked a vehicle, advancing an investigation following Defendant's arrest and the probation officer's reasonable suspicions aroused after the patdown. The match was to identify Defendant with a particular

vehicle. Whether, at the point of the matching, the officers had reasonable suspicion of any violation of a further condition of probation is not a determinative issue. The issue is whether the search rose to a level of intrusion into Defendant's privacy so that reasonable suspicion was required. It did not. The intrusion was minimal. Furthermore, not only is there "a reduced expectation of privacy in cars," *State v. Ruffino,* 94 N.M. 500, 502, 612 P.2d 1311, 1313 (1980), Defendant's status as a convicted criminal on probation under a court-ordered intensive supervision program, and the terms of his ISP agreement, substantially reduced to a minimum Defendant's expectation of privacy as to the door lock of his vehicle for the purpose of exploring whether the vehicle was Defendant's vehicle. Moreover, at the point of matching the key to the lock, the officers did not enter the vehicle, but only identified the vehicle with Defendant's key.

{26} Under these circumstances, the matching activity was not unreasonable. *See United States v. $109,179 In United States Currency,* 228 F.3d 1080, 1087–88 (9th Cir. 2000) (distinguishing *Portillo–Reyes* and holding that insertion of key obtained in patdown search of the claimant into lock of a vehicle door for the sole purpose of aiding the police in the identification of an individual was not an unreasonable search); *United States v. Concepcion,* 942 F.2d 1170, 1172–73 (7th Cir.1991) (holding that insertion of key obtained from the defendant after he was arrested into lock of apartment door did not violate the Fourth Amendment); *Lyons,* 898 F.2d at 213 (concluding that insertion of key in padlock on storage unit was not an unreasonable search); *Commonwealth v. Alvarez,* 661 N.E.2d 1293, 422 Mass. 198, 209–10 (1996) (holding that insertion of key obtained from premises where the defendant was arrested into a nearby parked vehicle door lock did not violate either the federal or state constitution).

{27} Defendant does not separately and independently attack the search inside the vehicle, apparently conceding that if the arrest, patdown, and key-lock matching searches were lawful, the later vehicle search that produced the contraband was lawful.

He does not expressly set out an argument of illegality based on the factual basis underlying the officers' search inside the vehicle. The closest he comes to attacking this search is the two broad headings he sets out for his points: (1) "The probation officer did not have 'reasonable cause' to search [Defendant's] vehicle, as required under the probation regulation governing searches"; and (2) "The officers did not establish the required grounds for ... the searches." We therefore do not explore or decide whether the search inside the vehicle was constitutionally permissible. It suffices to say that that search was not a product of any preceding unlawful arrest or search.

{28} Even were we to rely on the legality of that search for our decision, we would hold that it was reasonable. Under the probation order and under his ISP agreement, Defendant represented "an excessively high assessment of risk of violation of probation." § 31–21–13.1(A). His expectations of privacy, particularly as to his vehicle parked outside the probation office, were necessarily reduced by that status and by the provisions in the probation order and ISP agreement regarding warrantless arrests and searches. He was under arrest, and had undergone a patdown search that aroused suspicions and a key-lock match that caught him in a lie. Defendant's probation status, together with his prior convictions and the current probation violation for which he was arrested, the patdown discovery of a large sum of cash in small bills, Officer Garnand's belief that Defendant was unemployed, and Defendant's lie about how he arrived at the probation office were sufficient to give the officers a reasonable basis to search the vehicle for evidence of another violation of his probation conditions.

**Note on Outstanding Search and Seizure Issues**

{29} Defendant did not specifically or separately argue below and does not specifically or separately argue on appeal that he is entitled to a suppression order based on violations of the administrative regulations alone, irrespective of whether there were constitutional violations. Nor does Defendant cite authority on the issue. We therefore do not address this issue. We note that in *Gardner*, this Court concluded that a probation officer's participation in a warrantless search of the trunk of a probationer's vehicle, although in violation of administrative regulations, was nevertheless authorized under the probation order and passed constitutional muster because it was reasonable. 95 N.M. at 173–75, 619 P.2d at 849–51. In a related vein, nothing in this opinion is intended to set out any view of this Court as to whether an arrest or a search in violation of both (1) administrative regulations, and (2) probation orders and ISP agreements would require suppression even were we to determine that the arrest and/or search was reasonable under constitutional requirements.

{30} Defendant appears to suggest that Article II, Section 10 of the New Mexico Constitution affords greater protection than the Fourth Amendment by arguing that PPD Regulation 215 is similar to the need for exigent circumstances for a warrantless search of an individual not on probation as required in *Campos v. State*, 117 N.M. 155, 159, 870 P.2d 117, 121 (1994). In our view, for the reasons discussed in this opinion, the arrest and searches in the case at hand were reasonable under the requirements of both constitutional provisions.

{31} The State's primary position throughout this appeal has steadfastly been that the probation order and ISP agreement control the outcome because Defendant agreed to be bound by conditions permitting carte blanche warrantless arrest and searches rather than be incarcerated. The State asserts that it is unnecessary to look beyond those documents and Defendant's probation status to consider the constitutionality of the arrest and searches, relying primarily on *Knights* and *Gardner*. The State says that because "Defendant agreed to the terms and standards of intensive supervision that allowed a warrantless search upon request[,] ... it is not necessary to show the reasonableness of the probation officers' actions." In addition, for the first time in these proceedings, the State asserted, in a brief filed after this Court withdrew its first opinion, that Defendant's consent in the probation order and ISP

agreement "is a valid waiver of his Fourth Amendment rights."

{32} Because we determine that the arrest and searches at issue in this appeal were reasonable under the federal and State Constitutions, we do not analyze or decide the question whether Defendant's probation status together with the probation order and his ISP agreement, are, without any consideration of reasonableness, sufficient to uphold the arrest and searches under requirements or rules that do not require consideration of constitutional reasonableness. For the same reason, and also because it was not presented until after we withdrew our first opinion in this appeal, we do not address the State's argument that Defendant waived his Fourth Amendment rights by agreeing to abide by the terms of the probation order and the ISP agreement.

### The Miranda Issue

{33} During the suppression hearing, the following exchange occurred between defense counsel and Officer Garnand:

Q. [W]hen you were questioning [Defendant], he admitted that the car was his; is that correct?

A. Yes.

Q. Did you beforehand read him *Miranda* rights?

A. Not before.

Q. Asking questions of him?

A. No, I didn't read—before asking questions about the vehicle?

. . . .

Q. Okay. But after the handcuffs were placed on [Defendant], at any time was [sic] the Miranda rights given to him?

A. No.

Defendant contends that because Officer Garnand did not read Defendant his *Miranda* rights before she asked him questions about the vehicle, the contraband was the fruit of illegal questioning. The State raises lack of preservation.

{34} Defendant's motion to suppress was not based on the asserted failure to give *Miranda* warnings. In the suppression hearing, Defendant's counsel stated nothing regarding this issue in his opening remarks or in conversations with the court before the witnesses testified. Those remarks and discussion were about the basis for Defendant's arrest and the searches. It was in the very last portion of his rather short redirect examination of Officer Garnand that Defendant's counsel asked the officer about whether she read Defendant his *Miranda* rights. In his closing remarks, in between his discussion of Defendant's arrest and the searches, Defendant's counsel stated that, "at the point of his arrest, *Miranda* warnings were not given to him and he was questioned" and that Defendant "made statements as far as being dropped off." Defendant's counsel then asserted that "he should have been *Mirandized*," whereupon the court asked for authority, and counsel stated that:

> under the state constitution it's required in this particular case because he was facing probation violation charges. But in court today he's facing trafficking charges, which is very serious, I do believe applies. So I question whether that particular evidence as far as the statement made by him without being *Mirandized* should be used against him. But going back to the main point, Your Honor, is the issue what happened with those keys.

The court and counsel then immediately moved back into a discussion of the circumstances surrounding the use of the key to unlock the vehicle. At no time did Defendant's counsel specifically ask the court to suppress evidence based on the failure to give *Miranda* warnings, ask the court for any ruling as to the failure to give *Miranda* warnings, or discuss the matter again. The State's counsel did not mention the *Miranda* issue in his closing argument. The court did not mention the *Miranda* issue either in its oral determination of the motion to suppress or in the order it entered denying the motion.

{35} We agree with the State that Defendant failed to preserve the *Miranda* issue. The issue was not raised in Defendant's motion. Defendant did not alert the State or the court that this was an issue before he presented his witnesses. Defendant briefly questioned Officer Garnand

about *Miranda* warnings, mentioned the testimony in closing argument citing no authority for the point other than "I believe that under the state constitution it's required," and then abruptly changed the subject, "going back to the main point," and never asking for a ruling on the matter. The court did not mention the issue when ruling on the suppression motion. *See* Rule 12–216(A) NMRA 2004 (stating "[t]o preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked"); *State v. Varela*, 1999–NMSC–045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (stating in order to preserve an issue for appeal, the defendant must make a timely objection that specifically informs the district court of the nature of the claimed error and invokes an intelligent ruling thereon); *State v. Vargas*, 1996–NMCA–016, ¶ 15, 121 N.M. 316, 910 P.2d 950 (holding that the defendants failed to preserve a pretextual entry issue when they did not request that the district court rule on that issue); *see also State ex rel. Human Servs. Dep't v. Martin*, 104 N.M. 279, 280, 720 P.2d 314, 315 (Ct.App.1986) (observing that the requirement of preservation of error for appellate review applies equally to constitutional questions).

{36} Defendant argues, without citation to authority, that the district court's silence on the issue should be construed as a ruling against him. We will not address this assertion absent authority. *See* Rule 12–213(A)(4) NMRA 2004; *Sonntag v. Shaw*, 2001–NMSC–015, ¶ 2, 130 N.M. 238, 22 P.3d 1188 ("We do not address [the appellant's] claim because he has failed to provide this Court with citations to relevant authority and has not argued this issue with sufficient particularity."); *Hall v. Hall*, 114 N.M. 378, 386, 838 P.2d 995, 1003 (Ct.App.1992) ("When parties fail to cite authorities in support of their contentions, we are entitled to assume that they could not find support after diligent search."). Alternatively, Defendant asks for a remand for the district court to decide the issue, arguing that Defendant should not be penalized because the issue fell through the cracks. He cites *United States v. Walters*, 269 F.3d 1207, 1219 (10th Cir.2001), in which the government conceded that the un-ruled upon issue was properly raised and pre-

served for the district court. However, unlike in *Walters*, in the present case the State has not conceded that the issue was properly raised and preserved, and we have determined that the issue was not preserved.

{37} Even were the issue to be determined on its merits, Defendant would not prevail. In Defendant's counsel's closing remarks to the district court, he mentioned only "statements [by Defendant] as far as being dropped off." Therefore, any argument regarding alerting the district court to the *Miranda* issue would be limited to Defendant's concern about his response to the question as to how he arrived at the probation office–a response by Defendant to a question asked before the key-lock matching occurred. Thus, even were we to address the issue, we do not think that the question asked at the time of Defendant's arrest about how Defendant arrived at the probation office amounts to a question designed to elicit an incriminating response or likely to have that effect. *See State v. Ferrari*, 80 N.M. 714, 719, 460 P.2d 244, 249 (1969) (stating that "interrogating" under *Miranda* refers to questions "designed to elicit incriminating responses" or questions "likely to have that effect"). Although the conversation was initiated by the officer and not Defendant, in the context in which it was asked, the question does not constitute the type of custodial interrogation that requires application of the *Miranda* rule. Furthermore, Defendant's arrest was not for independent criminal activity, but for breach of the no-alcohol condition of his probation which would result, at worst, in a revocation of Defendant's probation, not in new criminal charges. Although he had been placed under arrest, at the time of the questioning Defendant was not in a setting that could be characterized as unfamiliar or an interrogation environment.

{38} Under the foregoing circumstances, we do not think that Miranda warnings were necessary. *Cf. State v. Gutierrez*, 119 N.M. 618, 620–22, 894 P.2d 395, 397–99 (Ct.App. 1995) (holding that *Miranda* warnings were not necessary at a preliminary probable cause hearing on a parole revocation, likening the preliminary hearing to a non-custodi-

al probation interview as in *Minnesota v. Murphy*, 465 U.S. 420, 421, 430, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), which held that a probationer meeting with his probation officer was not "in custody" for purposes of receiving *Miranda* warnings even though he was "subject to a number of restrictive conditions governing various aspects of his life," and "in custody for purposes of federal habeas corpus" (internal quotation marks omitted)). While *Murphy* indicated that the issue might be different if the defendant were under formal, custodial arrest, 465 U.S. at 430, 433, 104 S.Ct. 1136, the United States Supreme Court was obviously thinking of an arrest for criminal activity in a custodial interrogation setting, not an arrest in a setting such as that in the present case for noncriminal conduct that nevertheless violated a condition of probation.

**CONCLUSION**

{39} We affirm the denial of Defendant's motion to suppress.

{40} **IT IS SO ORDERED.**

I CONCUR: JAMES J. WECHSLER, Chief Judge.

MICHAEL E. VIGIL, Judge (dissenting).

VIGIL, Judge (dissenting).

{41} To pass constitutional scrutiny, a search must be reasonable. *See Attaway*, 117 N.M. at 149, 870 P.2d at 111 (1994) (noting that "the ultimate question in all cases regarding alleged search and seizure violations is whether the search and seizure was reasonable"). The search of Defendant's vehicle was not reasonable, in my opinion. I therefore dissent from that part of the majority opinion holding that the search of Defendant's vehicle did not violate his constitutional rights under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution.

{42} The supervision of a person on probation "is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." *Griffin*, 483 U.S. at 875, 107 S.Ct. 3164. However, "[t]hat permissible degree is not unlimited." *Id.* Consistent with these principles, we require that limitations of a probationer's rights concerning searches be reasonable. *See Marquart*, 1997–NMCA–090, ¶ 19, 123 N.M. 809, 945 P.2d 1027 (stating that a court may impose as a condition of probation that the probationer give his or her consent to "reasonable warrantless searches" by a probation officer "to ensure compliance with the conditions of probation"); *Gardner*, 95 N.M. at 174, 619 P.2d at 850 ("The requirement to submit to search 'at any time' is subject to the requirement that the 'time' be reasonable.").

{43} In *Knights*, the Supreme Court held that the warrantless search of the probationer's apartment, supported by reasonable suspicion and authorized by a condition of probation, was reasonable within the meaning of the Fourth Amendment. *Knights*, 534 U.S. at 122, 122 S.Ct. 587. Allowing a probation officer to perform a warrantless search under a reasonable suspicion standard rather than the more stringent probable cause standard appropriately balances the special need of a probation system to supervise individuals on probation with a probationer's constitutional right to privacy. *Id.* at 121, 122 S.Ct. 587 ("Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term 'probable cause,' a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable."). A condition of probation which authorizes a probation officer to perform a warrantless search must be reasonably related to the probationer's rehabilitation. *See* NMSA 1978, § 31–20–6(F) (2004) (authorizing conditions of probation reasonably related to rehabilitation); *Gardner*, 95 N.M. at 174, 619 P.2d at 850 (recognizing search requirement must be reasonably related to rehabilitation and concluding that requiring a prior narcotics offender to submit to search was proper). Thus, warrantless searches are restricted to those instances necessary to advance the purposes of probation. A warrantless search not reasonably related to the probationer's rehabilitation is not "reasonable." Requiring individualized, reasonable suspicion of a probation violation as a prerequisite for conducting a warrantless search protects against

standardless and unconstrained discretion, thus insuring that such searches are reasonable and within constitutional limits.

{44} I therefore respectfully submit that the warrantless search of a probationer's vehicle is not constitutionally reasonable unless: (1) it is authorized by the conditions of probation, and (2) there is a reasonable suspicion that evidence of a violation of probation will be found.

{45} Defendant was previously convicted of aggravated assault and aggravated battery, and he was on probation. One of the standard conditions of probation stated:

> You will permit any Probation Officer to visit you at your home or place of employment at any time and you will permit a warrantless search, by a Probation Officer, of your person, automobile, residence, property and/or living quarters if he/she has reasonable cause to believe that such a search will produce evidence of a violation of your conditions of probation.

{46} Defendant was also required to serve his probation under a program of intensive supervision. *See* § 31–21–13.1(A) (defining "intensive supervision programs"). As part of his intensive supervision, Defendant agreed, "I will submit to a search of my person, residence and personal belongings, including automobile, by the Intensive Supervision Officer upon request."

{47} Defendant's probation officer decided she was going to arrest him when he came to the probation office for a regular visit because a three day old urinalysis was positive for alcohol, and Defendant was not allowed to consume alcohol under the conditions of his probation. He was arrested for the probation violation and handcuffed. A search of Defendant's person incident to the arrest produced cash, two cell phones, and keys. None of these are contraband or evidence of a separate probation violation. Defendant was asked how he came to the probation office, and he replied that his friends had dropped him off. Again, whether friends dropped him off or whether he drove to the office had no bearing on any possible additional probation violation. Without Defendant's consent, a second probation officer took Defendant's keys to see if they fit vehicles parked in a parking lot across the street. There is no evidence of what probation violation the officer expected to find. How many vehicles were tried is unknown. He unlocked a Chevrolet Suburban with Defendant's key and told Defendant's probation officer.

{48} Defendant's probation officer asked Defendant why he lied about how he came to the probation office. She could not remember what Defendant said, other than to admit that the Chevrolet Suburban was his. Defendant's probation officer then requested fellow probation officers to search the vehicle. She told Defendant his vehicle was going to searched. When asked during the suppression hearing what authority she had to order the search, she said, "under the authority of the probation and parole policy that he signed a probation order stating that he will submit to a warrantless search if reasonable cause—if we believe it may produce evidence of a violation." However, Defendant was already handcuffed and under arrest for violating his probation. Further, Defendant's probation officer never said what violation she had reasonable cause to believe would be proven by the search. Without Defendant's consent and without a warrant, probation officers then searched inside Defendant's vehicle. What they were looking for is unknown. They did find cocaine, leading to Defendant's conviction for trafficking by possession with intent to distribute cocaine and his status as a habitual offender.

{49} The first question is whether the searches of Defendant's vehicle were authorized by Defendant's standard condition of probation. It requires "reasonable cause" on the searching probation officer's part that the search will produce evidence of a probation condition violation. I assume "reasonable cause" means "reasonable suspicion" as discussed later in this opinion, rather than the more stringent standard of "probable cause." *See* Black's Law Dictionary (8th ed.2004) (stating that "probable cause" is also termed "reasonable cause").

{50} Whether reasonable suspicion exists is reviewed de novo on appeal by looking at the totality of the circumstances. *State v.*

*Urioste,* 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964. Probation officers possess reasonable suspicion when they are aware of specific articulable facts which, judged objectively, would lead a reasonable person to believe a probation violation occurred or was occurring. *See id.* (describing a reasonable suspicion of criminal activity). Reasonable suspicion is not satisfied by unsupported intuition, an inarticulable hunch, a gut instinct, or unparticularized suspicion. *See id.* ¶ 10 ("A police officer cannot forcibly stop an individual for purposes of investigation merely on the basis of an inchoate and unparticularized suspicion or hunch that criminal activity may be afoot." (internal quotation marks and citation omitted)); *State v. Cohen,* 103 N.M. 558, 562, 711 P.2d 3, 7 (1985) ("Unsupported intuition is insufficient."); *State v. Galvan,* 90 N.M. 129, 132, 560 P.2d 550, 553 (Ct.App.1977) ("[A]n inarticulable hunch does not provide the basis for a reasonable suspicion."). When a probation officer relies on her experience to establish a reasonable suspicion, she must provide more than a conclusion unsupported by any explanation as to the type of experience she has or how that experience provides a basis for her action. *See id.* Finally, reasonable suspicion must exist at the inception of the search; the probation officer cannot rely on facts which arise as a result of the search. *See Jason L.,* 2000–NMSC–018, ¶ 20, 129 N.M. 119, 2 P.3d 856. Tested by these standards, reasonable suspicion to search Defendant's vehicle was lacking.

{51} I assume, as does the majority, that matching Defendant's key with the Chevrolet Suburban constituted a search under the Fourth Amendment and Article II, Section 10. However, reasonable cause to believe that matching Defendant's key with the Chevrolet Suburban would produce evidence of a violation of any condition of probation was absent. Reasonable cause to believe that a violation of probation would be discovered by searching the interior of the vehicle was also absent. Specifically, even if Defendant's probation officer learned from the key matching search that Defendant lied about how he arrived at the probation office, this fact and her prior knowledge that he possessed cash, cell phones, and keys did not establish reasonable cause that a violation of a condition of probation would be discovered inside the vehicle. The State failed to establish what violation would be proven by the key matching search and subsequent search inside the vehicle, and it had the burden to prove the validity of these warrantless searches. *See Gallegos,* 2003–NMCA–079, ¶ 12, 133 N.M. 838, 70 P.3d 1277 ("It is the State's burden to prove the existence of circumstances justifying a warrantless search."). The searches of Defendant's vehicle were not authorized by the general conditions of probation.

{52} Similarly, the searches were not authorized by the condition of Defendant's intensive supervision. It states that Defendant will submit to a search "upon request." Here, there was no "request" to search; the probation officers simply searched Defendant's vehicle. Thus, the searches were invalid. *See State v. Jeffers,* 116 Ariz. 192, 568 P.2d 1090, 1093 (Ct.App.1977) (stating search invalid as outside scope of probation condition when probation officer conducted search without a request and probation condition allowed search "when so requested" by probation officer (internal quotation marks omitted)).

{53} Even if the requirement of a "request" is read out of the probation condition, the search violated the regulations of the New Mexico Probation and Parole Division. PPD Regulation 214, quoted by the majority in ¶ 12 specifically states its policy is that a search is allowed only when there is "reasonable cause" to believe the probationer is in possession of prohibited items or that evidence of a violation of the conditions of probation will be found. A "reasonable cause search" is in turn defined in Regulation 214 as "[a] search in which available evidence would lead a reasonable person to believe that the offender is in possession of prohibited items or that evidence of a violation will be found." The preceding analysis of reasonable suspicion demonstrates that there was no "reasonable cause search" as required by

the PPD's own regulations. That resulted in a violation of Defendant's constitutional rights.

{54} I am unable to agree with the majority that the searches of Defendant's vehicle complied with the constitutional requirement of reasonableness. I therefore dissent.