Certiorari Denied, No. June 21, 2010, No. 32,416

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-066**

**Filing Date:  April 22, 2010**

**Docket No. 28,139**

**STATE OF NEW MEXICO,**

        **Plaintiff-Appellant,**

**v.**

**SUNDAE BOLIN,**

        **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Teddy L. Hartley, District Judge**

Gary K. King, Attorney General
Francine A. Chavez, Assistant Attorney General
Santa Fe, NM

for Appellant

Hugh W. Dangler, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**KENNEDY, Judge.**

**{1}**    Defendant-Appellee, Sundae Bolin, was indicted on charges of trafficking a controlled substance in violation of NMSA 1978, Section 30-31-20 (2006), and conspiracy to traffic in a controlled substance contrary to NMSA 1978, Section 30-28-2 (1979).  Prior to trial, the district court granted Defendant's motion to suppress, finding that the evidence against her was obtained by police who improperly enlisted the assistance of probation officers to conduct a police investigation.  The State appeals the suppression and argues that the district court's decision is unsupported by substantial evidence.

**{2}**     We hold that substantial evidence supports the district court's conclusion that police improperly used probation officers to effectuate an investigation. All further inquiries in this case flow from that surrogate relationship, and we therefore have no cause to consider the State's other contentions as those events occurred after the initial impropriety had already occurred.

**{3}**     We affirm.

**FACTS**

**{4}**     On November 17, 2006, Probation Officer Don Guy received a telephone call from police attempting to execute a warrant on Rebecca Valdez in an ongoing narcotics investigation. Valdez had been seen the previous week in the company of Defendant, one of Guy's probationers, and police speculated the two might be together. Probation Officer Guy agreed to assist police, and later that day, he and Probation Officer Wade Carter traveled to Defendant's residence with Sergeant Brack Rains and Patrol Officer John Hanks of the Portales Police Department. Once there, the four made contact with Defendant, who informed them that she had not seen Valdez. Defendant's physical appearance indicated to the group that she might be using drugs and, when asked, Defendant said she had taken drugs the previous evening. Probation officers Guy and Carter then administered a drug test that came up positive. They conducted a search of Defendant's immediate area that revealed various contraband items. They arrested Defendant for a probation violation, and the search was temporarily halted while police requested a warrant. Once the warrant was approved, police conducted a second search that revealed additional contraband.

**{5}**     Citing Defendant's positive drug test and the contraband discovered at her residence during the initial search by probation officers, the State charged Defendant with a probation violation. Then, in a separate action based on evidence found during the second search under the police warrant, a grand jury returned an indictment against Defendant for trafficking a controlled substance and conspiracy to traffic a controlled substance. Objecting to the searches, Defendant filed a motion to suppress and, on October 16, 2007, the district court held an evidentiary hearing to consider the matter.

**{6}**     Probation Officer Wade Carter testified first. He stated that on November 17, 2006, Defendant's probation officer, Don Guy[1], received a phone call from Police Sergeant Rains indicating that Defendant might be associating with Valdez, a known criminal. Carter accompanied Probation Officer Guy, Sergeant Rains, and Patrol Officer John Hanks to Defendant's residence, where he assisted in both questioning Defendant and searching her home. No home visit was scheduled that day for Defendant, and Carter testified that had it not been for the call from Sergeant Rains, none would have been conducted. He stated that

---

[1] Probation Officer Don Guy was not called to testify at the suppression hearing.

2

even though he did not know what Valdez was wanted for at the time of the visit, it would be inappropriate for a probationer to associate with a criminal like Valdez. For that reason, he and Probation Officer Guy intended to accompany police to Defendant's home in order to inform her that she could no longer associate with Valdez. Carter testified that only after a probationer has been told not to associate with a particular known criminal does associating with that person constitute a probation violation.

**{7}** Defendant met the group when it arrived at her home. She informed them that Valdez was not there, and when asked, Defendant admitted using drugs. At that point, Probation Officer Carter testified that he considered Defendant under arrest for a probation violation. Carter and Probation Officer Guy then administered a drug test on Defendant that came back positive and quickly searched her immediate area. That first search turned up several prohibited items, which in turn gave police the probable cause necessary to procure a warrant for the second search.

**{8}** Patrol Officer John Hanks testified next. Hanks stated that he was employed as a K-9 officer, and that prior to the visit to Defendant's home, he had been involved with Sergeant Rains in a narcotics investigation involving Valdez. Valdez was wanted for dealing drugs, and Officer Hanks testified that because Valdez had been seen with Defendant the week prior, police intended to use Defendant to lead them to Valdez. They were acting on a hunch, and had no facts to indicate that Valdez would be present at Defendant's residence other than that the two had been recently seen together. Sergeant Rains called Probation Officer Guy on the phone to discuss the situation and set up the visit. When the group arrived at Defendant's residence, Sergeant Rains participated in questioning Defendant about her drug use and her association with Valdez. Once Defendant admitted to violating her probation, probation officers Carter and Guy conducted a search and discovered contraband. It was at that point that Sergeant Rains ordered everyone to stop the search so that he could apply for a search warrant.

**{9}** The suppression hearing concluded with the testimony of Police Sergeant Brack Rains. He confirmed that he and Officer Hanks had been conducting an investigation and needed to serve a warrant on Valdez, who had been seen with Defendant. Because the two had been seen together, he called the probation office to enlist its assistance. Rains also confirmed that he went into the house with probation officers Guy and Carter, participated in the initial questioning of Defendant, and applied for the search warrant after the search by Guy and Carter revealed contraband. Police went to Defendant's home not only to serve the warrant on Valdez, but also to provide security for the probation officers who were checking on Defendant. As far as Sergeant Rains could tell, Defendant never posed any threat to probation officers Guy and Wade. Throughout the visit, Defendant was cooperative; she was neither aggressive, combative, nor armed. In response to questions about the search warrant, Sergeant Rains testified that when probation officers "call [police] to do a home visit" and contraband is found, standard procedure dictates that officers seek a search warrant.

**{10}** The district court granted Defendant's motion in a letter decision dated October 23, 2007, which suppressed all evidence produced after Defendant informed officers that Valdez was not at her residence. The court found that the police officers' only reason for arriving at Defendant's residence was to find Valdez. Likewise, the probation officers' only reason for being there was to aid a police investigation. Probation officers, when they have reasonable cause to believe that a probation violation has occurred, may enlist the help of police in executing a search. However, the court concluded, police may not use probation officers to assist in conducting police duties. Thus, in this case, police improperly searched Defendant's residence under the right given to probation officers. They derived probable cause from contraband found by probation officers who were present only because they were assisting police to locate a person other than their probationer. As a result, when Defendant informed officers that Valdez was not present, the encounter should have ended and any evidence produced thereafter was acquired illegally.

**{11}** On appeal, the State challenges the district court's order and argues that it is unsupported by substantial evidence. The State claims: first, that the probation officers' visit was not a subterfuge for a police investigation; second, that once they arrived at Defendant's home, the probation officers acquired reasonable cause to believe a violation of probation had occurred and therefore properly conducted the search; and third, notwithstanding the question of reasonable cause, the probation officers were justified in searching Defendant's home incident to a lawful arrest as a result of a clear probation violation.

**STANDARD OF REVIEW**

**{12}** Whether a district court properly suppressed evidence as the fruit of an illegal search creates mixed questions of law and fact. As such, we determine whether substantial evidence supports the court's findings of fact and then review de novo the application of law to those facts. *State v. Baca*, 2004-NMCA-049, ¶ 11, 135 N.M. 490, 90 P.3d 509; *State v. Reynolds*, 119 N.M. 383, 384, 890 P.2d 1315, 1316 (1995). In reviewing the way in which the court applied law to the facts, "we view the facts in a manner most favorable to the prevailing party." *Baca*, 2004-NMCA–049, ¶ 11; *see State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856.

**Cooperation Between Probation Officers and Police**

**{13}** Searches and seizures conducted upon probationers without a warrant must be reasonable under the Fourth Amendment of the United States Constitution and Article II, Section 10, of the New Mexico Constitution. *State v. Ponce*, 2004-NMCA-137, ¶ 16, 136 N.M. 614, 103 P.3d 54. A probationer's rights in this regard are more limited than those of other citizens, *State v. Gardner*, 95 N.M. 171, 174, 619 P.2d 847, 850 (Ct. App. 1980), and our courts have held that probation officers may constitutionally search a probationer's home without a warrant when they possess reasonable cause to believe a probation violation has occurred. *See, e.g.*, *Baca*, 2004-NMCA-049, ¶ 3; *Ponce*, 2004-NMCA-137, ¶ 12; *see also*

4

*Griffin v. Wisconsin*, 483 U.S. 868, 872 (1987) (holding that a warrantless search of a probationer's home was constitutional where the probation officer possessed "reasonable grounds").

**{14}** Though the authority of probation officers to conduct such searches is broad, that authority may not be exercised as a proxy or surrogate for police investigations. *See Baca*, 2004-NMCA-049, ¶ 53. To ensure that the constitutional reasonableness test is met, when police participate in such a search with probation officers, courts must determine that probation officers acted independently. Analyzing a collaboration of this type in *Gardner*, this Court held

> The fact that there was cooperation between the probation officer and the police did not make the search illegal, because it was requested by the probation officer. When the search is at the probation officer's request, as it was in this case, the search was reasonable if the probation officer believes that a search is necessary to perform his duties properly.
>
> . . . .
>
> [P]roper visitation by a probation officer does not cease to be so because he is accompanied by a law enforcement official . . . . However, under no circumstances should cooperation between law enforcement officers and probation officers be permitted to make the probation system a subterfuge for criminal investigations.

95 N.M. at 175, 619 P.2d at 851 (internal quotation marks and citations omitted); *see Baca*, 2004-NMCA-049*, ¶¶* 54, 55. In summarizing the issue, the American Law Reports have noted that, the mere fact that police are present or involved in a search does not render that search invalid, "[b]ut if the [probation] officer becomes a mere tool of the police who are seeking to take advantage of his authority to conduct warrantless searches of a [probationer], the search has been held invalid." Phillip E. Hassman, *Validity, Under Fourth Amendment, of Warrantless Search of Parolee or his Property by Parole Officer*, 32 A.L.R. Fed. 155 § 2[a] (2009) (internal quotation marks omitted).

**{15}** New Mexico courts have not yet been called to determine when a warrantless search of a probationer becomes a "subterfuge for criminal investigations." *Gardner*, 95 N.M. at 175, 619 P.2d at 851 (internal quotation marks and citation omitted). A survey of other jurisdictions, however, indicates that the decisive inquiry is whether probation officers acted with a probationary purpose. In other words, as the Tenth Circuit held in *United States v. Warren*, the well-established rule that probation officers may conduct warrantless searches of their probationers rests "on the rehabilitative relationship" between the two; thus, the authority to conduct such a search does not extend "to other law enforcement officers unless they are acting under the direction of the [probation] officer." 566 F.3d 1211, 1217 (10th Cir. 2009) (emphasis omitted) (internal quotation marks and citation omitted); *Smith v. Rhay*,

419 F.2d 160, 162-63 (9th Cir. 1969) (unconstitutional search resulted where sheriff was investigating a burglary, wanted to talk to probationer, and enlisted the assistance of probation officer, who conducted a search); *see United States v. Hallman*, 365 F.2d 289, 292 (3rd Cir. 1966) (where parolee was apprehended by police and then transported to parole officer's office, a search conducted by parole officer was "part and parcel of the same transaction" involving police and was therefore unconstitutional); *People v. Candelaria*, 406 N.Y.S.2d 783, 786 (N.Y. App. Div. 1978) (holding that "a parolee's status ought not to be exploited to allow a search which is designed solely to collect contraband or evidence in aid of the prosecution of an independent criminal investigation [and that] [w]hen the search is of such a nature, the parole officer becomes the conduit of the police officer in doing what the police officer could not do himself" (citation omitted)). In order for the search to be constitutional under the probationer exception to the warrant requirement, the probation officer must be acting as the defendant's "supervising guardian," not "as the agent of the very authority upon whom the requirement for a search warrant is constitutionally imposed," namely, the police. *Smith*, 419 F.2d at 162-63.

**Involvement of Probation Officers Was Subordinate to the Police Purpose**

{16}    The district court's letter decision is unmistakably premised on the conclusion  that probation officers Guy and Carter were improperly recruited by Sergeant Rains to assist the police in arresting Valdez pursuant to a narcotics investigation. The court stated that "[w]hile APO Carter may request backup from Portales Police in activity appropriate to APO Carter's duties as a probation officer (and I understand this is common), Portales Police cannot utilize the rights of APO Carter to conduct 'home visits' in order to assist Portales Police in the conduct of police duties." The visit made to Defendant's home "was to see if the fugitive, Rebecca Valdez, was there. She was not. Upon the determination that [she] was not there, . . . these officers should have been on their way." Viewing the facts in the light most favorable to Defendant, we hold that substantial evidence supports the conclusion that the visit in this case, and thus the resulting searches, was not conducted for a probationary purpose.

{17}    The visit to Defendant's home, the two searches conducted there and, at last, Defendant's arrest, punctuate a series of events that began when police became aware of Defendant's suspected association with Valdez; Defendant's arrest constitutes the culmination of an active police investigation. When asked about how police learned of Defendant, Patrol Officer Hanks testified that while participating in a surveillance operation, he had seen Defendant with Valdez. He then briefed Sergeant Rains on the matter, and when the two sought to serve a warrant on Valdez, Rains called Probation Officer Guy in hopes of tracing her whereabouts via the association with Defendant. As Patrol Officer Hanks testified, the police effort to locate Valdez was proceeding on a lead, a hunch that connected Valdez to the Defendant. Nothing, other than one association noted in a surveillance operation, indicated that Valdez would be at Defendant's house. Nor did police have any indication that Defendant would know Valdez's location. The police narrative accompanying Defendant's arrest warrant states, "As part of an [ongoing] narcotic

6

investigation we were looking for [Valdez] reference a warrant for trafficking cocaine. I know that [Valdez] and [Defendant] have been known to hang around together and I've seen them together. [Defendant] is on Adult Probation with Don Guy."

{18} But for the police seeking Valdez on the outstanding warrant and their investigation, probation officers Guy and Carter never would have appeared at Defendant's doorstep. No home visit had been scheduled for that day and, once at Defendant's home, police actively participated in questioning Defendant, not only about Valdez's whereabouts, but about whether Defendant had herself been dealing drugs. Indeed, as Defendant's arrest warrant makes clear, police had Defendant in custody and were interrogating her while probation officers conducted the first search. When the probation officers' search revealed contraband, it was Sergeant Rains, not the probation officers on site, who ordered a halt while he could procure a search warrant.

{19} The State relies on evidence that once at Defendant's residence, officers Guy and Carter had the authority to conduct a search based on reasonable cause. As probation officer Carter testified, the visit was made for two reasons: to assist police in finding Valdez and also to tell Defendant she could no longer associate with Valdez. When Carter and Guy confronted Defendant, she had experienced "sudden weight loss and scratch marks on [her] face," and such symptoms are consistent with continued drug use. Likewise, when questioned by police and probation officers, Defendant admitted to recent drug use. We have no doubt that such facts would be sufficient to establish reasonable cause if probation officers Guy and Carter had been acting independently of police. *See, e.g.*, *Baca*, 2004-NMCA-049, ¶¶ 4-6.

{20} Certainly, Carter's testimony that he and Guy intended to tell Defendant not to associate with Valdez tends to show at least *some* non-police motivation. Had there been more testimony of this type tending to establish an independent probationary reason for the visit, the district court might have reasonably reached a different conclusion. But as it stands under the unique circumstances of this case, the district court chose to accord greater weight to the testimony of all three witnesses, testimony tending to show that probation officers were motivated, at least in significant part, by a desire to assist police in apprehending a fugitive. Such a motivation does nothing to promote the rehabilitative relationship between Defendant and her probation officer. *See Warren*, 566 F.3d at 1217. Based on the evidence, it was the police who first called the probation officers for assistance, it was the police who participated in questioning Defendant about Valdez, it was the police who detained Defendant while Carter and Guy performed the first search, and it was the police who ordered the probation officers to stop the search while a warrant was requested.

**CONCLUSION**

{21} Though the court had before it evidence indicating that probation officers might have maintained *at least some* motivation independent of police, the weight of the evidence clearly cuts the other way. Thus, viewing the facts in the light most favorable to the district

court's determination, we hold that substantial evidence supports the decision of the district court to grant her motion to suppress. We affirm.

**{22}    IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Judge**

_____

**LINDA M. VANZI, Judge**

**Topic Index for *State v. Bolin*, Docket No. 28,139**

**CL**          **CRIMINAL LAW**
CL-CS          Conspiracy
CL-CL          Controlled Substances


**CA**          **CRIMINAL PROCEDURE**
CA-MR          Motion to Suppress
CA-PB          Probation
CA-SE          Substantial or Sufficient Evidence
CA-SZ          Search and Seizure
CA-WS          Warrantless Search